(9 Misc. Rep. 500.)

LYON v. MOTLEY et al.

(Common Pleas of New York City and County, General Term. August 1, 1894.)

1. SALE BY SAMPLE—RIGHT TO RETURN.
   Where a contract for the sale of goods by plaintiff to defendant by sample provides that the goods are "subject to return if rejected," and plaintiff knows that the goods are for a customer of defendant, the right to return does not depend on whether the goods are up to sample, but whether or not they are accepted by the customer; and the fact that defendant shipped them to his customer without inspection is immaterial.

2. CUSTOM AND USAGE—TO EXPLAIN CONTRACT.
   Where a seller knows that the goods are wanted for a certain business, evidence of the custom in such business is admissible to explain an ambiguity in the contract.

3. CONTRACTS—INTERPRETATION BY PARTIES.
   The parties are bound by the interpretation which they themselves give the contract.

Appeal from eleventh district court.

Action by James W. Lyon against Thornton N. Motley and others to recover the value of goods sold. There was a judgment in favor of defendants and plaintiff appeals. Reversed.

Argued before BOOKSTAVER and BISCHOFF, JJ.

Charles S. Kellogg, for appellant.
Charles W. Dayton, for respondents.

BOOKSTAVER, J. This action is brought to recover the value of goods alleged to have been sold by the plaintiff to the defendants, who then were, and now are, copartners in business, under the firm name of Thornton N. Motley & Co. On the 18th March, 1893, Bleecker Bangs, defendants' buyer, gave to J. H. Sykes, plaintiff's salesman, the following order:

"Office of Thornton N. Motley & Co., 43 John Street.
"New York, March 18th, 1893.
"B 9897.                                                   Order No. B 9897.
   "J. W. Lyon & Co., City: Please ship the following goods at once: Twenty (20) large bales of wool waste, as sample M, at 5¼ cents lb., delivered at our store. Quality guarantied, and subject to return if rejected. Deliver all you can at once. Terms: 60 days from date of invoice. Do not render bill until entire order is delivered. Ship to 43 John street, N. Y. Mark ——, Care of ————. Ship via truck. Charge to our account. Render bill promptly, giving order, number, and stating where and how the goods were shipped. Render statement the 1st of month succeeding purchase.
       "[Signed]                                          B. Bangs, Buyer."

In accepting this order, the following memorandum of sale was given:

"March 18th, 1893.
   "Sold to Messrs. T. N. Motley, 43 John street, the following goods: 20 large bales of wool waste, as sample M., at 5¼ cents, delivered at store, subject to terms of order B 9897. Terms: 60 days' cash. Shipping instructions: By truck before Mar. 25, 1893.
   "J. W. Lyon & Co.,
   "Per [Signed] J. H. Sykes."

Pursuant to this contract, plaintiff delivered 10 bales of wool waste to the defendants, and they afterwards refused to allow the plaintiff to supply the remaining 10 bales in completion of the contract, and on the trial claimed to have returned the 10 bales that were delivered. In delivery of the 10 bales in controversy, the defendants sold and shipped them to their customer, who rejected the same, and the defendants notified plaintiff by letter of March 30, 1893, of the rejection, and asked him to advise them to what point he desired the rejected waste shipped.

The first question arising upon this appeal is as to the true intent and meaning of the contract made between the parties. Appellant contends it was merely a sale by sample, and nothing more. The respondents contend that, while it was a sale by sample, it also provided for the return of the goods, if rejected by their customer or customers. In the construction of such a contract, the chief question is, what was the intention of the parties in making it? When the contract was made, plaintiff knew that the goods were for a customer of defendants. Plaintiff's salesman was told by defendants' buyer that, if the goods were not accepted, they would be returned, and this before the contract was made. These facts tend to show that it was the understanding of the agents of both parties that the clause in the contract "and subject to return if rejected" had a special significance and meaning. Again, it is a fundamental principle of construction that a contract should be so construed as to give effect to every word and expression contained therein. Miller v. Railroad Co., 90 N. Y. 430; Barhydt v. Ellis, 45 N. Y. 107. If the plaintiff's construction should prevail, then there would be no meaning whatever to this clause, and there could be no object in inserting it. In the light of the knowledge of the parties, we think the court below correctly construed the contract, and that the true meaning of it was that the goods were not only to be up to the sample, but, even if up to the sample, they were to be returned if the customer of the defendants rejected them. This being the case, the fact that the defendants did not examine the goods after an opportunity to do so, but shipped them directly to their customer, is of no significance. The right to return did not depend upon whether or not the goods were up to sample, but whether or not they were accepted by the customer. Inasmuch as there was some ambiguity in the clause under consideration, the court properly admitted evidence of the custom in the railroad supplies business, in order to elucidate its meaning, especially in view of the fact that plaintiff's agent was informed that the goods were intended for that business. But, while all this is true, we think there must be a new trial in the action, for the reason that there is nothing in the evidence to show that the defendants returned the goods to the plaintiff, or to any place of business belonging to him. The parties to a contract will be bound by that construction of the contract which they themselves give it. That the defendants considered it their duty, in making a return under the contract in question, to return the goods to the plaintiff's

place of business in New York, is shown by their agent's testimony, who says:

"I asked Mr. Sykes the location of their factory in Jersey City. I told him we would ship the goods to Jersey City, in preference to New York, where they would have to be carted over the river again. I said we would instruct our consignee to make the return to Jersey City."

But, while he did this, and knew the location of the factory, neither the defendants nor their agents claimed to have returned the goods to that factory. On the other hand, we gather from the evidence that the nearest approach to this was to ship the goods to the Jersey City railroad depot, without paying charges thereon, and to notify the plaintiff that they were there. This was not such a return as the law requires, nor such as was contemplated by the parties. Respondents seek to overcome this difficulty by claiming that the appellant waived his right to a return of the goods to his factory. The only basis for this contention is two letters written by Mr. Bangs, buyer of the defendants, to the plaintiff,— one dated March 30, 1893, in which he notifies the plaintiff of the rejection of the goods delivered, and asks him to advise the defendants as to the place where he desired the rejected waste shipped. In response to this letter, Mr. Sykes, plaintiff's salesman, had an interview with Mr. Bangs, in which it was agreed that the goods should be returned to Jersey City, the location of the plaintiff's factory being communicated to Mr. Bangs at the time. The other letter is dated April 5, 1893, and notified the plaintiff that the goods had been shipped to him in car No. 903 of the Philadelphia & Reading road, and asked him to take care of the rejected material at once. This clearly was not a sufficient return or offer to return. As we have before stated, the freight charges were not paid; the plaintiff was not bound to pay them by the terms of the agreement, nor was he bound to seek the goods at the railroad depot. On the other hand, it was the defendant's duty to return the goods to the plaintiff at the point agreed upon; which, under the modification of the contract, was at his factory in Jersey City. For this reason, the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.