87 N.Y.2d 36 (1995)
660 N.E.2d 1121
637 N.Y.S.2d 342
Vigilant Insurance Company of America et al., Respondents,
v.
Housing Authority of the City of El Paso, Texas, et al., Appellants.
Court of Appeals of the State of New York.
Argued September 20, 1995
Decided November 1, 1995.
Bondy & Schloss, New York City (Joel S. Forman and Jacqueline I. Meyer of counsel), for appellants.
D'Amato & Lynch, New York City (Ronald H. Alenstein, Donna Marie Hughes and Jeffrey Underweiser of counsel), for respondents.
Chief Judge KAYE and Judges SIMONS, TITONE, SMITH, LEVINE and CIPARICK concur.
*39 BELLACOSA, J.
Plaintiffs, collectively referred to as "Vigilant," are subrogees of Drexel Burnham Lambert. They plead three discretely denominated causes of action that have some overlapping features. A predominant objective is the declaration of their superior right and title with respect to certain bearer bonds and interest coupons issued by defendant Housing Authority of the City of El Paso. The stolen bonds have had a checkered history culminating in two key legal issues on this appeal. First, we must determine the respective Statutes of Limitations applicable to plaintiffs' various causes of action and, second, the governing accrual events. The merits of the causes of action and the appropriate relief are not before us on this appeal.
Supreme Court dismissed the complaint, but the Appellate Division reinstated all the causes. The Appellate Division then certified the following question to this Court: "Was the order of this Court, which reversed the order of Supreme Court, properly made?" We modify the order of the Appellate Division and, thus, answer the certified question, in the main, in the negative.
Plaintiffs had jointly issued a brokers bond and policy to the Drexel firm, a former member of the New York Stock Exchange. The policy covered Drexel for any loss caused by alleged stolen securities. On or about July 21, 1983, Drexel's Switzerland office purchased 41 El Paso Housing Authority bearer bonds for $112,681 from Chessed Anstalt, a Liechtenstein corporation. The bonds, originally issued in 1967, bore a maturity date of July 1, 1997. Plaintiffs allege that Drexel purchased the bonds in good faith, for value, without notice of adverse claims and thus qualified as a bona fide purchaser for value (see, Uniform Commercial Code § 8-302). On July 27, 1983, Drexel sold the bearer bonds to Irving Trust Co. for $118,218. Plaintiffs assert that Irving also took possession of the bonds in good faith, for value and without notice of any adverse claims. Irving shortly discovered that a holder previous *40 to Drexel had reported the bonds stolen. Under these circumstances, New York Stock Exchange rule 272 and Securities Exchange Commission rule 17f-1 (17 CFR 240.17f-1) required Drexel to reclaim and replace the bonds for its purchaser, Irving. Drexel complied by going to the open market and purchasing replacement bonds. Irving then assigned to Drexel all of its right, title and interest in the stolen bonds and coupons.
Drexel sought indemnification from plaintiffs for its losses. Plaintiffs paid the claim and Drexel, in turn, assigned to plaintiffs all of its right, title and interest in the bonds. Plaintiffs claim, therefore, also to be bona fide purchasers as assignees through the bona fide purchasers' chain of transfers.
Plaintiffs also note that the Federal Bureau of Investigation seized the bonds and their interest coupons from Drexel as evidence in 1983 as part of its investigation of the bond theft. The FBI first returned the bonds and coupons to plaintiffs in 1989. At that first opportunity, plaintiffs detached the interest coupons then due and payable and presented them to the El Paso Housing Authority via its transfer agent, Morgan Guaranty Trust Company. Morgan refused payment, confiscated the coupons and declined to remove "stops" placed against the bonds themselves, as requested by plaintiffs.
Plaintiffs sued in 1990, seeking relief under three separate causes of action: a declaration of their rights and title to the bonds and coupons; tortious conversion of the bonds and interest coupons by Morgan; and breach of the bond obligations.
At Supreme Court, defendants successfully resisted the suit on Statute of Limitations grounds. The court held that plaintiffs' rights were wholly derivative from Drexel and that all the claims thus accrued in 1983, when Drexel first learned of the theft.
The Appellate Division reversed on the law and reinstated plaintiffs' complaint, with two Justices dissenting (201 AD2d 58). It applied UCC 3-109, concluding that accrual of the declaratory judgment claim would occur on the first day after maturity of the bonds in 1997 (see, UCC 3-122). As to other claims, the Court held that "[a]ny of these interest [coupon] claims which accrued six years prior to the commencement of this action are presumably precluded by the period of limitations" (201 AD2d, at 61). By implication, the others were held viable and not stale. Defendants-appellants seek reinstatement of Supreme Court's dismissal of the entire complaint.
In Solnick v Whalen (49 N.Y.2d 224), the Court stated that the CPLR prescribes no general period of limitation for a *41 declaratory judgment action. Courts must look to the underlying claim and the "nature of the relief sought" to determine the applicable period of limitation (id., at 229; see also, Sears, Roebuck & Co. v Enco Assocs., 43 N.Y.2d 389, 395). Stated another way, a court's inquiry focuses on the "substance of [the] action to identify the relationship out of which the claim arises and the relief sought" (Solnick v Whalen, supra, at 229; New York City Health & Hosps. Corp. v McBarnette, 84 N.Y.2d 194, 201; Save the Pine Bush v City of Albany, 70 N.Y.2d 193, 202; Press v County of Monroe, 50 N.Y.2d 695, 701). When the rights of parties sought to be stabilized in a declaratory judgment action are, or have been, open to resolution through a particular procedural route for which a specific limitation period is statutorily provided, then that period generally governs the time for commencement of the declaratory judgment action (Solnick v Whalen, 49 N.Y.2d 224, 229, supra). Otherwise, the six-year catch-all Statute of Limitations set forth in CPLR 213 (1) applies (see, New York City Health & Hosps. Corp. v McBarnette, supra, at 201; Solnick v Whalen, supra, at 230; Sears, Roebuck & Co. v Enco Assocs., supra, at 396; Press v County of Monroe, supra, at 701).
The gravamen of plaintiffs' declaratory judgment action is that they are bona fide purchasers entitled to payment on the bonds upon maturity and on the interest coupons when due. The declaratory prayer for relief includes that "plaintiffs right and title to the El Paso bonds and coupons is superior to all other parties [and] that defendants withdraw all stops and other impediments preventing plaintiffs from freely negotiating the aforesaid bearer bonds."
We note initially that CPLR 211 (a) grants a 20-year limitation period to recover on a bond. It provides:
"An action to recover principal or interest upon a written instrument evidencing an indebtedness of the state of New York or of any person, association or public or private corporation * * * secured only by a pledge of the faith and credit of the issuer, regardless of whether a sinking fund is or may be established for its redemption, must be commenced within twenty years after the cause of action accrues."
Although defendant City of El Paso Housing Authority qualifies as a public corporation under CPLR 211 (a), plaintiffs cannot avail themselves of that lengthy stretch of repose. The bonds at issue on their face declare that they are backed by *42 the "full faith and credit of the United States." Since the bonds are not secured "only" by a pledge of full faith and credit of the "issuer," the long relaxation allowed under CPLR 211 (a) is unavailing.
Next, CPLR 213 (4) relates specifically to actions on bonds. Subdivision (4) provides that "an action upon a bond or note, the payment of which is secured by a mortgage upon real property, or upon a bond or note and mortgage so secured, or upon a mortgage of real property" must be commenced within six years. Because the bonds at issue are not secured by a mortgage upon real property, that prerequisite discounts its applicability. Without any other specific limitation periods being statutorily applicable to plaintiffs' declaratory relief claims, the cow-catcher six-year period obtains (see, CPLR 213 [1]; Solnick v Whalen, 49 N.Y.2d 224, 230, supra).
The dispositive fulcrum, thus, becomes the accrual date. The question is whether 1983, 1989 or 1997 controls. Defendants-appellants urge 1983, when Drexel first became aware that the bonds were stolen (Cruden v Bank of N. Y., 957 F.2d 961 [2d Cir 1992]; Insurance Co. v United States, 561 F Supp 106 [ED Pa 1983]; Rieser v Baltimore & Ohio R. R. Co., 123 F Supp 44, affd 228 F.2d 563 [2d Cir 1955]). That was Supreme Court's view and ruling, though the Appellate Division differed.
Plaintiffs seek to uphold the 1997 accrual date on the ground that the bearer bonds are time instruments governed by UCC 3-109 (see also, UCC 3-122). UCC 3-109 (1) provides that "[a]n instrument is payable at a definite time if by its terms it is payable (a) on or before a stated date or at a fixed period after a stated date." Subdivision (1) of UCC 3-122 provides that "[a] cause of action against a maker or an acceptor accrues (a) in the case of a time instrument on the day after maturity" (emphasis added). UCC 1-201 (1) defines an "[a]ction" to include "recoupment, counterclaim, set-off, suit in equity and any other proceedings in which rights are determined." The Appellate Division reversed and granted plaintiffs reinstatement of the declaratory judgment cause on that ground (201 AD2d 58, 60; see, Valdes v Atlantic Steamer Fire Co., 120 AD2d 661, 662, lv denied 68 N.Y.2d 609).
A major difficulty with this rationale, however, is that the general provisions of article 3 expressly exclude "investment securities" from its governance. Notably, Uniform Commercial Code § 3-103 states: "[t]his article does not apply to money, documents of title or investment securities" (emphasis added). Additionally, the Official Comment to article 3 provides: "It *43 should be noted especially that this Article does not apply in any way to the handling of securities. Article 8 deals with that subject" (Uniform Commercial Code § 3-101, Official Comment, McKinney's Cons Laws of NY, Book 62½, at 4).
Turning then to article 8 of the Uniform Commercial Code, we see that it governs stocks, bonds and other evidences of indebtedness. A security is defined in article 8 as an instrument which (1) is issued in bearer or registered form; (2) is a security commonly dealt in a security exchange or market and; (3) is either one of a class of series or divisible into a class or series (see, UCC 8-102). Because bearer bonds satisfy all three elements of UCC 8-102, they are "securities" as defined in that section (see, Silverman v Alcoa Plaza Assocs., 37 AD2d 166, 170-171; Matthysse v Securities Processing Servs., 444 F Supp 1009; Phoenix Ins. Co. v National Bank & Trust Co., 366 F Supp 340; Andrews v Troy Bank & Trust Co., 529 So 2d 987, 990 [Ala]; Morris v Kaiser, 292 Ala 650, 299 So 2d 252; 7 Hawkland, Alderman & Schneider, Uniform Commercial Code Series art 8, § 8-102:4, at 30). Because a security is specifically governed by article 8 and expressly excluded from article 3, the accrual provision of UCC 3-122 (1) is not applicable to this case (Uniform Commercial Code § 8-102, Official Comment, McKinney's Cons Laws of NY, Book 62½, at 129; see generally, Comment, The Status of an Investment Security Holder Under Article 8, 33 Fordham L Rev 466 [1965]). Thus, we must look elsewhere for the rationale that justifies our agreement with the result reached by the Appellate Division.
As the Court has stated in other contexts, a cause of action does not accrue until an injury is sustained (see, LaBello v Albany Med. Ctr. Hosp., 85 N.Y.2d 701, 705; Snyder v Town Insulation, 81 N.Y.2d 429, 432; Kronos, Inc. v AVX Corp., 81 N.Y.2d 90; Jacobus v Colgate, 217 N.Y. 235, 241). An action accrues, then, when all of the facts necessary to sustain the cause of action have occurred, so that a party could obtain relief in court (see, Aetna Life & Cas. Co. v Nelson, 67 N.Y.2d 169, 175). We conclude that the general six-year CPLR limitations period, as applied in this case, will only begin to run on the day after maturity of the bonds, July 2, 1997.
The accrual of an action "depends on a nice balancing of policy considerations" (Victorson v Bock Laundry Mach. Co., 37 N.Y.2d 395, 403). A defendant's interest in defending a claim must be balanced with a plaintiff's interest in not being deprived of a claim before a reasonable chance to assert it arises (Martin v Edwards Labs., 60 N.Y.2d 417, 425). Declaratory *44 judgment actions do not fit neatly into the balancing equation, since they are often commenced "before there has been conduct which might give rise to a right to remedial or coercive relief" (Solnick v Whalen, 49 N.Y.2d 224, 230, supra).
In Phoenix Acquisition Corp. v Campcore, Inc. (81 N.Y.2d 138), we added illumination that helps to support the correct rationale and result in the portion of the dispute we are here discussing. There, the creditor loaned money secured by a promissory note providing that the creditor had the option to accelerate the entire debt due at any time if the debtor failed to make payment of any sum of principal or interest. When Campcore defaulted, the creditor waited until maturity to demand full payment of the principal and interest. In rejecting Campcore's argument that the Statute of Limitations blocked the suit, we held that the creditor's right to accelerate the debt did not affect the Statute of Limitations, which ran only upon the maturity of the discrete obligation (id., at 140).
That rationale parallels the present controversy with respect to plaintiffs' pursuit of declaratory relief. Since the right to sue on the bond's principal debt does not accrue until the debt is "due and payable" (id., at 141), we perceive no reasonable basis to bar on Statute of Limitations grounds plaintiffs' opportunity to seek a declaration of those seriously disputed rights on the debt instrument prior to maturity of the bond, especially in the unusual evolution of this controversy.
Plaintiffs' other causes of action are classified as tortious conversion and breach of contract. We agree with Supreme Court on this aspect of the case that these two causes are barred by pertinent Statutes of Limitations.
Plaintiffs' second cause of action alleges that "[d]efendants' confiscation of the coupons presented by plaintiffs and their refusal to redeem" the coupons and bonds effectively constituted a tortious conversion of the bonds and the coupons. Conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights" (Employers' Fire Ins. Co. v Cotten, 245 N.Y. 102, 105; Industrial & Gen. Trust v Tod, 170 N.Y. 233, 245). For Statute of Limitations purposes, an action for conversion as well as an action for damages for the taking of a chattel are subject to a three-year limitation period (see, CPLR 214 [3]). Since accrual runs from the date the conversion takes place (see, Sporn v MCA Records, 58 N.Y.2d 482, 488) and not from discovery or the exercise of diligence to discover (see, Varga v Credit-Suisse, 5 AD2d 289, affd 5 N.Y.2d 865), we deem *45 the conversion, as alleged, to have occurred in July 1983. That is the date when defendant Morgan placed "stops" on the bonds and allegedly first refused to honor the title and right of Drexel to negotiate the bonds or to redeem the interest coupons. Since the whole action was not commenced until 1990, the threeyear limitation bars this conversion claim and any tort-related relief or damages, as such. The action denominated as a breach of contract similarly accrued in 1983 under like reasoning and is, accordingly, barred by the applicable six-year statute (CPLR 213 [2]).
Last, as to plaintiffs' claim regarding past due coupon interest, we have held that when a contract provides for the payment of money in installments, such as interest installments, the Statute of Limitations runs on each installment from the date it becomes due (Phoenix Acquisition Corp. v Campcore, Inc., 81 N.Y.2d 138, 141, supra; Matter of Philippe, 31 Misc 2d 193, affd 19 AD2d 587, affd 14 N.Y.2d 600; see also, 18 Williston, Contracts § 2026C, at 787 [3d ed 1961]). Thus, the Appellate Division correctly curtailed how far back plaintiffs' request for relief could reach in that regard.
Accordingly, the order of the Appellate Division should be modified in accordance with this opinion, with costs to plaintiffs-respondents, and, as so modified, affirmed and the case is remitted to Supreme Court for further proceedings. The certified question should be answered in the negative.
Order modified in accordance with the opinion herein, with costs to plaintiffs-respondents, and, as so modified, affirmed. Certified question answered in the negative.