SVENSKA FINANS INTERNATIONAL BV, as successor in interest to Gewics Holding AG, Plaintiff,

v.

SCOLARO, SHULMAN, COHEN, LAWLER & BURSTEIN, P.C.; David A. Holstein; and William J. Leberman, Defendants.

No. 98–CV–1570(FJS/DNH).

United States District Court, N.D. New York.

March 3, 1999.

Law Office of Cory E. Friedman, New York City (Cory E. Friedman, of Counsel), for plaintiff.

Bond, Schoeneck & King, LLP, Syracuse, New York (Jonathan B. Fellows, of Counsel), for defendant Scolaro, Shulman, Cohen, Lawler & Burstein, P.C.

Green & Seifter, P.C., Syracuse, New York (Lee Alcott, of Counsel), for defendant David A. Holstein.

Law Office of Walter D. Kogut, P.C., Syracuse, New York (Walter D. Kogut, of Counsel), for defendant William J. Leberman.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

Plaintiff Svenska Finans International BV files this complaint as the successor in interest to Gewics Holding AG ("Gewics"). In October 1989, Defendant Scolaro, Shulman, Cohen, Lawler & Burstein, P.C. ("Scolaro, Shulman") filed a proof of claim on behalf of Gewics in a bankruptcy case involving ICS Cybernetics, Inc. ("ICS"). Scolaro, Shulman successfully recovered on that claim. This lawsuit arises out of a dispute as to whether Scolaro, Shulman— and in particular its two attorneys who handled the Gewics matter, Defendants David A. Holstein and William J. Leberman—properly disbursed the proceeds of the ICS claim.

Federal jurisdiction is based upon diversity of citizenship. Plaintiff's complaint alleges three state law causes of action: (1) breach of contract; (2) breach of fiduciary duty; and (3) conversion. Presently before the Court is a joint motion brought by all of the Defendants, pursuant to Fed. R.Civ.P. 12(b)(6), to dismiss Plaintiff's complaint on the grounds that each cause of action is time barred under the applicable statutes of limitations.

### Discussion

#### I. Standard of Review

A moving party may succeed on a Rule 12(b)(6) motion only when it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that

would entitle him to relief. *See Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998). All allegations in the complaint must be accepted as true, and reasonable inferences must be drawn in favor of the non-movant. *See id.*

## II. Timeline of Events

The dates upon which the events at issue occurred are critical to determining whether the statutes of limitations have expired. For this reason, a short timeline of those events is provided, as they are represented in Plaintiff's complaint.

On February 8, 1989, Gewics commenced liquidation. At this time, because Gewics maintained its principal place of business in Switzerland, Swiss law mandated that Gewics' former officers ceased to have any authority to act on behalf of the company. Only the liquidator had such authority. On October 25, 1989, Defendants filed the proof of claim against ICS on behalf of Gewics. In an order dated August 20, 1992, the Bankruptcy Court for the Northern District of New York (Gerling, J.) allowed a portion of the claim, in the amount of $750,000.

By letter dated and telecopied December 30, 1992, Christian Monney of Progressia Management Ltd. informed Defendants that his company was acting as liquidator for Gewics and asked for information regarding the Gewics/ICS bankruptcy claim. Defendants responded on January 13, 1993 by forwarding a copy of the ICS disclosure statement and plan of reorganization. No specific mention was made of the Bankruptcy Court's approval of the $750,000 claim. On February 1, 1993, Defendant Leberman wrote to Gert Wihlborg, a former officer of Gewics, to inform him of the Bankruptcy Court's August 1992 order.

Mr. Monney sent another telecopy to Defendants dated February 8, 1993, in which he asked about a disputed claim of Gewics that was listed in the ICS claims register. Mr. Monney asked whether the claim was lost or could be recovered through legal action. Defendant Leber-

man inquired of Mr. Wihlborg in a February 12, 1993 letter as to how much detail should be provided. Plaintiff's complaint does not indicate whether Mr. Wihlborg answered this request or whether Defendants provided a response to Mr. Monney's letter.

On February 18, 1993, Defendant Leberman sent a fax to Mr. Wihlborg to inform him that ICS would waive an appeal of the Bankruptcy Court's decision and pay 43.19% of the claim within two months for a $5,000 concession. Around March 19, 1993, Defendants received a check from ICS for $340,975.00 as a partial distribution on the claim. Mr. Wihlborg instructed Defendants to wire the money (less attorneys' fees) to a Swiss bank account with the remark "G. Wihlborg." Defendants did so on March 29, 1993. When Defendants received a second partial payment of $111,900 on May 12, 1993, they again wired the money to the same Swiss bank account per Mr. Wihlborg's directions.

Mr. Monney on June 3, 1993 telecopied a letter to Defendants stating that Progressia had been informed of the allowance of Gewics' claim against ICS for $750,000, and that Progressia knew Defendants had received $340,975 of that amount and would receive another payment soon. Mr. Monney expressed surprise that Defendants had not provided this information, and reminded Defendants that only Progressia, as liquidators, had authority to act on Gewics' behalf.

On July 14, 1993, Seestatt telecopied letters to Defendants and ICS to inform them that Seestatt had been appointed as substitute liquidators of Gewics. Defendant Leberman acknowledged receipt of this letter on July 16, 1993. ICS's counsel wrote to Seestatt on July 19, 1993 to explain that further payments under the claim would still be forwarded to Defendants. ICS sent a copy of this letter to Defendant Leberman.

Gewics was placed under bankruptcy administration in Switzerland on February 2, 1995. On June 29, 1995, Defendants received the final payment of $78,572.25 on the ICS claim. Whereas the previous two checks were made out to the Scolaro, Shulman law firm, this last check was payable to Gewics. Defendant Holstein endorsed the check on Gewics' behalf. Defendant Holstein wrote Mr. Wihlborg on August 1 and September 7, 1995 for instructions on where to deposit the money. On September 14, 1995, Defendants received a letter from Guus Mineur on behalf of Victum Holdings BV. Mr. Mineur claimed that Victum Holdings BV was the assignee of the ICS claim from Gewics as of January 12, 1989, and therefore Defendants should forward the final payment to an account in Luxembourg. On September 29, 1995, Defendants wired the balance of the monies, less legal fees, as instructed.

On March 4, 1996, the Swiss bankruptcy administrator for Gewics assigned the ICS claim and proceeds to one of Plaintiff's wholly owned subsidiaries. On September 6, 1996, Defendant Holstein responded to a request from Plaintiff's Swiss counsel regarding the ICS claim. Defendant Holstein acknowledged that Scolaro, Shulman had received the three payments on the claim and explained to where those payments were transferred. On April 18, 1997, the bankruptcy administrator assigned all claims against Defendants to the same subsidiary of Plaintiff. This subsidiary was liquidated effective May 7, 1997, and all of its assets were distributed to Plaintiff. By letter dated June 30, 1998, Plaintiff's counsel made a demand upon Defendants for the amount owed from the ICS claim. Defendants made no response.

Plaintiff's original complaint alleging conversion and breach of fiduciary duty was filed with this Court on October 6, 1998. An amended complaint adding the breach of contract claim was filed on October 22, 1998.

## III. Breach of Contract Claim

### A. Sufficiency of Plaintiff's Claim

■ Insofar as the pleading relates to breach of contract, Plaintiff alleges only that Defendants, as " 'agent of' " Gewics, filed a proof of claim on behalf of Gewics in bankruptcy court and then litigated that claim. *See* Pl.'s Compl. ¶¶ 11–12. Plaintiff conceded at oral argument that at present, it has no evidence of a retainer agreement between Defendants and Gewics. Nevertheless, Plaintiff argued that an implied contract existed, because Defendants had filed the ICS claim as an "agent" of Gewics, and an agency relationship is a contractual relationship. Plaintiff relied heavily upon the century-old decision of the New York Court of Appeals in *Wood v. Young*, 141 N.Y. 211, 36 N.E. 193 (1894), in support of the proposition that when an agent withholds money that rightfully belongs to his principal, the action is one for breach of contract to which the six-year statute of limitations applies.

■ *Wood* however, is distinguishable. The plaintiff in that case had "executed to the [defendant] a power of attorney authorizing him to demand and receive from the company the moneys due her under the policy." 141 N.Y. at 216, 36 N.E. 193. The Court of Appeals at least knew who had authorized the agency relationship and what the purpose of that relationship was. Plaintiff's complaint in the case at hand fails to provide such necessary information. New York courts however, require a plaintiff who is alleging breach of contract—including breach of an implied contract—to set forth in the complaint those provisions of the contract upon which the claim is based. *See Shields v. School of Law, Hofstra Univ.*, 77 A.D.2d 867, 868–69, 431 N.Y.S.2d 60 (2d Dep't 1980).[1]

1. Furthermore, it is important to note that Plaintiff's complaint undermines the existence of a valid contractual relationship between the parties. The complaint provides that when Gewics commenced liquidation in early 1989, only the liquidator had authority to act

## B. Duplicity of Breach of Contract Claim with Plaintiff's Conversion Claim

■ New York courts review a plaintiff's alleged causes of action to determine whether any mischaracterization or duplicity has occurred. For example, the Appellate Division in *Katz v. Kar*, 192 A.D.2d 695, 696, 597 N.Y.S.2d 135 (2d Dep't 1993), concluded in *dicta* that the plaintiff's claim for breach of a bailment contract was actually a conversion claim, subject to the shorter statute of limitations. In another case where a plaintiff alleged malpractice, breach of contract and fraud against his attorney, the Appellate Division dismissed the latter two claims because the underlying facts were the same as those for the malpractice claim. *See Sage Realty Corp. v. Proskauer Rose LLP*, 675 N.Y.S.2d 14, 17–18 (1st Dep't 1998); *see also Marcus Borg Rosenberg & Diamond v. Gilbert, Segall & Young*, 248 A.D.2d 280, 280, 670 N.Y.S.2d 73 (1st Dep't 1998); *Senise v. Mackasek*, 227 A.D.2d 184, 185, 642 N.Y.S.2d 241 (1st Dep't 1996).

■ The factual allegations underlying Plaintiff's breach of contract and conversion claims are identical. Notably, when Plaintiff filed its amended complaint to add breach of contract, it included only one new factual allegation—that of Plaintiff's demand on June 30, 1998. The crux of the complaint otherwise focuses on Defendants receiving payments from the bankruptcy debtor and failing to forward the payments to Plaintiff's predecessors or involve Plaintiff's predecessors prior to wiring the monies at the direction of Mr. Wihlborg.

Plaintiff's allegations do nothing more than form the basis for a conversion claim. *See Vigilant Ins. Co. of Am. v. Housing Auth. of the City of El Paso, Texas*, 87

N.Y.2d 36, 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121 (1995) ("Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.") (internal quotation marks omitted). As such, Plaintiff cannot maintain its breach of contract cause of action, and the claim is dismissed as duplicative.

## C. Transforming Plaintiff's Breach of Contract Claim to a Malpractice Claim

As *Sage Realty, Marcus Borg* and *Senise* make evident, New York courts often dismiss breach of contract claims where they are duplicative of a malpractice claim. Here Plaintiff concedes that it neither pled a malpractice claim, nor included allegations of negligence in its complaint. *See* Pl.'s Mem. of Law in Opp'n to Defs.' Joint Mot. to Dismiss, at 7–8. Plaintiff argues however, that if the Court were to transform Plaintiff's breach of contract claim to one for malpractice, it would not be time barred. The Court disagrees.

The New York State Legislature, effective September 4, 1996, amended CPLR § 214(6) to provide that legal malpractice actions are subject to a three-year statute of limitations, regardless whether the underlying theory is based in contract or tort. Under the continuous representation doctrine, "[t]he statute of limitations on a claim based in attorney malpractice will be tolled for the period during which the attorney continues to represent the client *in a particular matter.*" *Gray v. Wallman & Kramer*, 224 A.D.2d 275, 275, 638 N.Y.S.2d 18 (1st Dep't 1996) (emphasis added). As applied to the case at hand, because Plaintiff seeks to hold Defendants liable for their actions with respect to each of the

on behalf of the company. Presuming this statement to be true, then only the liquidator would have had authority in October 1989 to instruct Defendants to file Gewics' claim against ICS in Bankruptcy Court. Yet Plaintiff never identifies who was the liquidator at that time or whether any of its officers directed that the ICS claim be filed. In light of the

facts that Progressia knew nothing about the status of the ICS claim in 1992, and also that Defendants claim in their brief to have taken direction from Mr. Wihlborg, a former officer of Gewics, the existence of a legitimate contractual relationship upon which to base Plaintiff's breach of contract claim is questionable.

three payments received from the bankruptcy claim, the statute of limitations would not begin to run until after Defendants' representation with respect to this claim ended. Based on Plaintiff's complaint, the last date upon which Defendants took any legal action in this capacity was September 29, 1995, when they wired the proceeds of the final payment to Victum Holdings BV.

When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court "is limited to facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken." *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.,* 155 F.3d 59, 67 (2d Cir.1998). Plaintiff argues in its brief that "[t]he exact termination of Defendants' representation is an issue of fact and cannot be resolved on 12(b)(6) motion." Pl.'s Mem. of Law in Opp'n to Defs.' Joint Mot. to Dismiss, at 18. Yet, as noted, nothing in Plaintiff's complaint or attached exhibits hints that Defendants' representation in this particular matter extended past September 29, 1995. Cases where questions of fact have been found with respect to the extent of an attorney's representation are distinguishable because there evidence existed to suggest that the attorney had continued to represent the client beyond the date asserted by the defendants. *See Weiss v. Manfredi,* 83 N.Y.2d 974, 977, 616 N.Y.S.2d 325, 639 N.E.2d 1122 (1994); *Gray,* 224 A.D.2d at 275–76, 638 N.Y.S.2d 18.

■ Without any basis in the complaint for believing that a date other than September 29, 1995 is the termination date, the statute of limitations should be deemed to start at this time. This determination then raises another issue for consideration, namely whether the amendment to CPLR 214(6) in September 1996 may be applied retroactively to Plaintiff's claim. The courts have been left to address this question, because the New York Legislature made no provision for retroactivity in the statute.

■ Under a three-year statute of limitations, Plaintiff's claim expired on September 29, 1998. Plaintiff's case therefore, falls within that category of cases where the time to bring suit under the amended version of CPLR 214(6) would not have expired when the amendment took effect. The test is whether this remaining time is "reasonable" in which to expect a plaintiff to bring a lawsuit under a shortened statute of limitations. *See Davis v. Isaacson, Robustelli, Fox, Fine, Greco & Fogelgaren, P.C.,* 175 Misc.2d 40, 45, 667 N.Y.S.2d 608 (N.Y.Sup.Ct.1997); *see also Shirley v. Danziger,* 252 A.D.2d 971, 676 N.Y.S.2d 369, 370 (4th Dep't 1998). With respect to Plaintiff, considering two years remained in which to file suit under the amended statute, it would appear that a reasonable time was afforded. Consequently, any perceived malpractice claim on the part of Plaintiff would be time barred, since Plaintiff did not file its original complaint until October 6, 1998—one week after the statute of limitations would have expired.

## IV. Breach of Fiduciary Duty

■ With respect to breach of fiduciary duty claims, New York applies either a three-year or a six-year statute of limitations, depending upon the substantive remedy sought by a plaintiff. *See Loengard v. Santa Fe Indus., Inc.,* 70 N.Y.2d 262, 266, 519 N.Y.S.2d 801, 514 N.E.2d 113 (1987). In particular, the shorter time period applies where monetary relief is sought, while the longer time period applies where equitable relief is sought. *See Cooper v. Parsky,* 140 F.3d 433, 440–41 (2d Cir. 1998); *Geren v. Quantum Chem. Co.,* 832 F.Supp. 728, 735 (S.D.N.Y.1993) (Leval, J.).

■ In this case, Plaintiff clearly seeks nothing more than monetary damages. It has requested damages to compensate for the monies Defendants received from the bankruptcy claim. *See Geren,* 832 F.Supp.

at 736 (citing *Resnick v. Resnick,* 763 F.Supp. 760, 768 (S.D.N.Y.1991).) While Plaintiff also requests costs, attorney's fees and punitive damages, it does not ask for any equitable relief. As such, the three-year statute of limitations applies. Since Defendants wired the final payment from the bankruptcy claim on September 29, 1995, and Plaintiff filed its complaint more than three years later on October 6, 1998, Plaintiff's cause of action for breach of fiduciary duty is time barred.

## V. Conversion Claim

All parties agree that a claim for conversion is subject to a three year statute of limitations. *See Vigilant Ins. Co. of Am.,* 87 N.Y.2d at 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121. The parties disagree however, as to when Plaintiff's cause of action accrued.

### A. Accrual of the Cause of Action

The general rule is that "accrual runs from the date the conversion takes place and not from discovery or the exercise of diligence to discover." *See id.* (internal citations omitted). Under this theory, Plaintiff's cause of action would have accrued on each of the dates that Defendants wired the money. Each of those dates is more than three years prior to the filing of Plaintiff's complaint on October 6, 1998.

Plaintiff points to an exception provided for in CPLR § 206(a). This statute provides:

[W]here a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed from the time when the right to make the demand is complete, except that

(1) where a right grows out of the receipt or detention of money or property by a trustee, agent, attorney or other person acting in a fiduciary capacity, the time within which the action must be commenced shall be computed from the time when the person having the right to make the demand discovered the facts upon which the right depends. . . .

Plaintiff claims the earliest date upon which it could have discovered Defendants had wired the ICS bankruptcy payments to other parties was September 9, 1996, when Defendant Holstein informed Plaintiff's Swiss counsel as to where the money was transferred. Under this theory, Plaintiff's complaint was filed three days prior to the expiration of the statute of limitations.

■ The problem with this theory is that it assumes "a demand is necessary." Clearly however, § 206(a) applies in only those circumstances where a demand is required prior to an action being commenced. The key question therefore is whether a demand is necessary for Plaintiff to bring its conversion claim. New York case law makes clear that whether a demand is necessary is dependent upon whether a defendant lawfully came into possession of the property at issue, and whether that defendant subsequently disposed of the property in such a way as to violate a plaintiff's ownership rights. More than ninety years ago, the New York Court of Appeals observed:

The rule that one who comes lawfully into possession of property cannot be charged with conversion thereof, until after a demand and refusal, is too well established to justify extended discussion. . . . But it has no application in a case where the lawful custodian of property commits an overt and positive act of conversion by an unlawful sale or disposition of the same.

*MacDonnell v. Buffalo Loan, Trust & Safe Deposit Co.,* 193 N.Y. 92, 101, 85 N.E. 801 (1908) (internal citations omitted). This principle is reiterated in recent case law and research materials. *See, e.g., Johnson v. Gumer,* 94 A.D.2d 955, 955, 464 N.Y.S.2d 318 (4th Dep't 1983); 23 N.Y.Jur.2d *Conversion, and Action for Recovery of Chattel* § 50 (1998).

■ Under the circumstances of this case, the rule does not apply, and no de-

mand is necessary for Plaintiff's cause of action to accrue. Although Defendants lawfully came into possession of the monies won through the bankruptcy claim, Plaintiff's complaint alleges that Defendants subsequently—and without authority from Gewics—deposited those monies into accounts that were not owned by Gewics. Assuming this allegation to be true for purposes of this Rule 12(b)(6) motion, Defendants thereby have committed "an overt and positive act of conversion," *i.e.*, they disposed of the funds in an unlawful manner such that neither Gewics nor Plaintiff can exercise control over the money. Consequently, no demand by Plaintiff is necessary before an action for conversion may be brought, and Plaintiff's causes of action accrued on each date when Defendants wired the bankruptcy claim proceeds. *See Morales v. Klopsch*, 158 A.D. 824, 827, 143 N.Y.S. 922 (1st Dep't 1913) (finding the plaintiff's cause of action for conversion accrued immediately upon the defendant's having sold and distributed the proceeds of bonds and coupons that he previously held in lawful possession). The last date upon which such a transaction occurred was September 29, 1995. Since Plaintiff did not file its complaint until October 6, 1998, the three-year statute of limitations had expired and Plaintiff's conversion claims are now time barred.

### B. Equitable Estoppel

█ The Court inquired of Plaintiff's counsel at oral argument whether Plaintiff was advancing a claim of equitable estoppel, whereby Defendants would be estopped from asserting a statute-of-limitations defense. Plaintiff's counsel attempted to advance such a theory, but the Court finds that this attempt falls short.

As acknowledged by the Second Circuit, *see Farkas v. Farkas*, 168 F.3d 638 (2d Cir.1999), and the state Appellate Division, *see Smith v. Cutson*, 188 A.D.2d 1034, 591 N.Y.S.2d 674 (4th Dep't 1992), a plaintiff may not invoke equitable estoppel where the pertinent information needed to file a claim is discovered before the expiration of the statute of limitations. That principle applies here. As indicated by Mr. Monney's June 3, 1993 letter to Defendants, in which he states that Progressia was surprised to learn from other sources that Gewics' claim against ICS had been allowed for $750,000 and that Defendants already had received $340,975 of that amount and would receive another payment soon, Plaintiff's predecessors in interest became aware of pertinent facts long before the conversion claims were time barred. Plaintiff's complaint makes no allegations that Defendants misrepresented what happened or attempted to conceal their actions. Nor does Plaintiff allege that either it or its predecessors made further inquiries to which Defendants did not respond, so as to suggest that Defendants frustrated all attempts to learn what had happened. At the very least, after ICS's counsel informed Seestatt on July 19, 1993 that further payments would be forwarded to Scolaro, Shulman, Plaintiff's predecessor had the basis for knowing it should keep in close contact with Defendants. Yet again the complaint is bare of any allegations that attempts were made to discover where the funds from the ICS claim were being held or that Plaintiff made demands with respect to transferring the money. For these reasons, the Court finds that Plaintiff fails to set forth any facts upon which the theory of equitable estoppel would apply.

### Conclusion

After carefully considering the entire file in this matter, the submissions of the parties, the oral arguments of counsel and the applicable law, it is hereby

ORDERED that Defendants' joint motion to dismiss Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED; and it is further

ORDERED that Plaintiff's complaint is DISMISSED in its entirety.

**IT IS SO ORDERED.**