Chieko **UEHIGASHI**, individually and derivatively, on behalf of **Transcendence Perfection Beyond, Inc.**, a New York corporation, Plaintiff,

v.

Takashi **KANAMORI**, an individual a.k.a. **"Voikunthanath Kanamori"** and/or **"Takashi Voitur"**; Zoe Thrall, an individual; William R. Huss, Esq., an individual; Nobuhisa Ishizuka, an individual; **Transcendence Perfection Beyond, Inc.**, a New York corporation; **Musicworks, Inc.**, a New York corporation; **Avatar Entertainment Corp.**, a New York corporation; d.b.a. **"Avatar Studios"**; **Avatar Studios, Inc.**, a New York corporation; **F.B. Communica-**

---

tions, Inc., a business of unknown origin; Morgan, Lewis & Bockius, LLP, a law firm based in Philadelphia, P.A., and doing business within the State of New York; North Fork Bank and Trust, a New York banking corporation; and Does 1 through 25, inclusive, Defendants.

No. 00 Civ. 5390(DLC).

United States District Court,
S.D. New York.

April 5, 2001.

Erwin J. Shustak, Thomas C. Frost, Shustak Jalil & Heller, New York, NY, for plaintiff.

John Linsenmeyer, Eric M. Manganelli, Morgan, Lewis & Bockius LLP, New York, NY, for defendants Morgan, Lewis & Bockius LLP, William R. Huss, and Nobuhisa Ishizuka.

## OPINION AND ORDER

COTE, District Judge.

This action was filed on July 20, 2000. On November 3, 2000, the Court dismissed the claims against two of the defendants— Morgan, Lewis & Bockius, LLP ("Morgan"), a law firm; and William R. Huss ("Huss"), one of its partners—as time-barred. On November 10, 2000, plaintiff served the First Amended Complaint reasserting claims against these two defendants and adding Nobuhisa Ishizuka ("Ishizuka"), a former partner of Morgan, as a defendant.[1] Morgan, Huss, and Ishizuka (collectively, the "Moving Defendants") now move to dismiss the amended complaint as time-barred or, in the alternative, for summary judgment pursuant to Rule 56(c), Fed.R.Civ.P. For the reasons set forth below, the motion to dismiss is granted.

## BACKGROUND

Plaintiff Chieko Uehigashi ("Uehigashi") alleges generally that defendant Takashi Kanamori ("Kanamori"), falsely holding himself out as an expert in estate planning and taxation, persuaded her to invest several million dollars in a company he controlled, Transcendence Perfection Beyond, Inc. ("TPB"). Uehigashi alleges that the transaction was a sham. Uehigashi brings claims against Kanamori and others under the federal securities laws, as well as under New York common and statutory law.[2]

According to the amended complaint, Uehigashi met Kanamori in February 1996. Kanamori convinced Uehigashi to invest in TPB and Morgan, acting as Kanamori's counsel, prepared the documents which Uehigashi executed in connection with her investment. During the period between April 1996 and June 1996, Uehigashi wired more than $5 million to TPB accounts controlled by Kanamori. In return for her investment in TPB, Uehigashi expected to receive monthly payments from TPB, which would serve as a monthly source of income while minimizing her and her family's estate tax.

Uehigashi alleges that in May 1996, Kanamori told her that he had retained Morgan "on her behalf to perform all necessary legal services relating to her investment in TPB." Uehigashi asserts that, in November 1996, Kanamori told her that Huss would be representing her in connection with TPB.

---

**1.** Plaintiff's First Amended Complaint was not actually filed until January 24, 2001, because when it was originally submitted it did not have an original signature from plaintiff's attorney.

**2.** On November 3, 2000, the Court denied Morgan and Huss's motion to dismiss based on lack of subject matter jurisdiction over the state law claims. The Court held that plaintiff's state law claims were so closely related to her federal claims, that it would exercise supplemental jurisdiction over the state claims.

On November 21, 1996, at Kanamori's request, Huss filed a notice of appearance as "attorney or representative" on Uehigashi's behalf in support of her application for an F–1 student visa and visas for two relatives who would accompany her to the United States .[3] In a letter that accompanied the application, Huss stated that Uehigashi would be "self-supported" during her stay in the United States, was guaranteed under the terms of her investment in TPB to receive "396 monthly installments of $13,500.00," and that this monthly income would be "more than adequate to support her during her temporary visit to the United States."

In December 1996, Kanamori provided Uehigashi with a "Subscription Agreement" regarding the TPB investment dated June 27, 1996, and prepared by Morgan. Because Uehigashi could not understand English, she told Kanamori that she planned to consult an attorney to advise her with respect to the subscription agreement. Kanamori told her not to consult an attorney, however, because a Japanese attorney would not understand her investment in TPB. Relying on Kanamori, Uehigashi signed the subscription agreement. In December 1996, Kanamori also sent Uehigashi another document—an "Option Agreement" dated June 27, 1996, and prepared by Morgan. Uehigashi did not sign the option agreement. When Uehigashi received the subscription and option agreements, Kanamori told her that Ishizuka had prepared the documents on her behalf and that Morgan "would continue to represent her interests in connection with her investment in TPB and her personal immigration and other matters."

The only conversation between the plaintiff and a Morgan attorney alleged in

the complaint occurred in March 1997. Uehigashi called Ishizuka because she had not received her first monthly payment from TPB and Kanamori was not returning her telephone calls. During the telephone conversation, Ishizuka assured the plaintiff that Morgan would not be involved in a fraudulent scheme, that he would contact Kanamori to resolve TPB's failure to pay the first monthly installment of $13,500, and that he would continue to monitor Uehigashi's investment to "ensure that all was correct." Uehigashi complains that at no time did the Moving Defendants advise her that they had either "ceased their representation of her" or that "she should seek other counsel or legal advice."

Uehigashi alleges that between July 1998, when TPB stopped making timely monthly payments to her, and May 2000, she did not consult with outside counsel or otherwise investigate Kanamori's potential wrongdoing because she relied on the Moving Defendants' assurances that they would continue to monitor her investment and protect her interests. Uehigashi asserts claims against the Moving Defendants for breach of fiduciary duty, breach of contract, and malpractice.

## DISCUSSION

A court may dismiss an action pursuant to Rule 12(b)(6), Fed.R.Civ.P., only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief.' " *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering the motion, the court must take "as true the facts alleged in the complaint and draw[ ] all reasonable inferences in the plaintiff's favor." *Jackson Nat. Life*

---

**3.** The Court may refer to documents integral to the amended complaint in deciding a mo-

tion to dismiss. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000).

*Ins. v. Merrill Lynch & Co.* 32 F.3d 697, 699–700 (2d Cir.1994). The court can dismiss the claim only if, assuming all facts alleged to be true, the plaintiff still fails to plead the basic elements of a cause of action.

■ Each of plaintiff's claims against the Moving Defendants is based on an allegation that she had an attorney-client relationship with them. Under New York law, the applicable statute of limitations for a legal malpractice claim is three years, whether the claim sounds in tort or in contract. N.Y. C.P.L.R. § 214(6); *Panigeon v. Alliance Navigation Line, Inc.*, No. 96 Civ. 8350(SAS), 1997 WL 473385, at *3 (S.D.N.Y. Aug. 19, 1997); *Brothers v. Florence*, 95 N.Y.2d 290, 716 N.Y.S.2d 367, 369–70, 739 N.E.2d 733 (2000). A cause of action for legal malpractice accrues at the time the malpractice occurs, even if it is discovered later. *Panigeon*, 1997 WL 473385, at *4; *Glamm v. Allen*, 57 N.Y.2d 87, 453 N.Y.S.2d 674, 677, 439 N.E.2d 390 (1982).

The only specific act of legal malpractice by the Moving Defendants alleged in the amended complaint was their recital in the November 21, 1996 letter that, under the terms of her investment, Uehigashi was "guaranteed" to receive $13,500 each month from TPB. This claim is time-barred by the three-year statute of limitations. The only oral communication alleged to have occurred between Uehigashi and the Moving Defendants was in March 1997, which is also time-barred under the three-year statute of limitations.

The issue becomes, nonetheless, whether Uehigashi and the Moving Defendants entered into an attorney-client relationship with respect to TPB. If an attorney-client relationship was created, then it would be necessary to decide whether the "continuous representation" doctrine tolls the statute of limitations. *Panigeon*, 1997 WL 473385, at *4. Thus, the question is whether either Morgan's assistance in connection with the 1996 visa application or Ishizuka's assurance in the March 1997 conversation is sufficient to create an attorney-client relationship.

■ In general, only the party retaining the services of an attorney can bring a legal malpractice action against the attorney. *Catizone v. Wolff*, 71 F.Supp.2d 365, 368 (S.D.N.Y.1999). While the attorney-client relationship arises only when an individual "contacts an attorney in his capacity as such for the purpose of obtaining legal advice or services," formality is "not an essential element in the employment of an attorney." *Id.* Instead, courts must "look at the words and conduct of the parties." *Id.* Courts have considered several factors in determining whether an attorney-client relationship exists, including whether a fee arrangement was entered into or a fee was paid, whether a written retainer exists, whether the attorney actually represented the individual, for example at a deposition, or performed legal services for the individual, and whether the purported client reasonably believed that the attorney was representing him. *Id.* A party's "unilateral belief" that he is represented by counsel "does not confer upon him the status of client unless there is a reasonable basis for his belief." *Id.* at 371.

As an initial matter, Uehigashi does not allege that she ever asked the Moving Defendants to represent her, that she had any written retainer agreement, or that she ever paid them for their legal services to her. She made her 1996 investments in TPB prior to any communication with the Moving Defendants. To the extent that they assisted her in obtaining a visa, that was done at Kanamori's request and there is no allegation that they performed any further services for her in connection with

any immigration matter after 1996. Thus, Uehigashi has not alleged that the Moving Defendants continued to represent her with respect to any immigration matters after she obtained her visa. *See, e.g., Luk Lamellen U. Kupplungbau GmbH v. Lerner,* 166 A.D.2d 505, 560 N.Y.S.2d 787, 789 (App.Div.2d 1990); *Baker's Service v. Robinson,* 85 A.D.2d 811, 445 N.Y.S.2d 630 (App.Div.2d 1981).

■ In any event, any malpractice claim arises not from the receipt of the visa, but from the Moving Defendants' alleged representations concerning the TPB investment. Specifically, Uehigashi claims that she took no action to obtain money from Kanamori for almost two years following July 1998 because she relied on the law firm to protect her interests. The attorney-client relationship, however, is subject matter-specific. *See Elias v. Albanese,* No. 00 Civ. 2219(JSR), 2000 WL 1182803, at *5 (Aug. 21, 2000); *Catizone,* 71 F.Supp.2d at 371; *Panigeon,* 1997 WL 473385, at *4; *Kearney v. Firley, Moran, Freer & Eassa, P.C.,* 234 A.D.2d 967, 651 N.Y.S.2d 781, 782 (App.Div.1996); *Zaref v. Berk & Michaels, P.C.,* 192 A.D.2d 346, 595 N.Y.S.2d 772, 774 (App.Div.2d 1993). Thus, the fact that the Moving Defendants had once assisted Uehigashi regarding her visa does not mean that they ever represented her in connection with the TPB investment.

Turning to the issue of the TPB investment itself, according to the amended complaint, Uehigashi knew that the Moving Defendants represented Kanamori in connection with TPB. When Kanamori presented her with two legal documents concerning TPB in December 1996, she did not seek legal advice from Morgan or its attorneys, but instead discussed consulting a Japanese attorney. Uehigashi alleges only one conversation between herself and the Moving Defendants: the March 1997 telephone conversation with Ishizuka. Uehigashi called Ishizuka in March 1997 to ask the Moving Defendants why their client had failed to pay her the first monthly payment due from the TPB investment.

In sum, Uehigashi fails to allege sufficient facts to create any reasonable basis for a belief that the Moving Defendants were her attorneys in connection with her investment in TPB. *See, e.g. Mason Tenders Dist. Council Pension v. Messera,* 4 F.Supp.2d 293, 298 (S.D.N.Y.1998). The only support for Uehigashi's claim that the Moving Defendants represented her in connection with the TPB matter are her conversations with Kanamori. These conversations are insufficient, even when combined with the plaintiff's description of the March 1997 conversation, to create a reasonable basis for a belief that Morgan or its attorneys represented her. While the facts for each case are unique, other courts have dismissed complaints where there are insufficient allegations to support a finding that an attorney-client relationship existed. *See, e.g., Heine v. Colton,* 786 F.Supp. 360, 367 (S.D.N.Y.1992).

■■ Because Uehigashi has failed to state a claim for legal malpractice, her breach of contract claim based upon the same facts must also fail. *Saveca v. Reilly,* 111 A.D.2d 493, 488 N.Y.S.2d 876, 878 (App.Div.2d 1985). Similarly, a claim for breach of fiduciary duty based on an attorney-client relationship is governed by New York's three-year statute of limitations where, as here, money damages are requested. *Svenska Finans Int'l BV v. Scolaro, Shulman, Cohen, Lawler & Burstein, P.C.,* 37 F.Supp.2d 178, 183 (S.D.N.Y. 1999).

Plaintiff's request for leave to amend her complaint a second time is denied. Although leave to amend is freely given, in this case it would be futile. *Dluhos v.*

*Floating and Abandoned Vessel,* 162 F.3d 63, 69 (2d Cir.1998) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). The plaintiff has already had one opportunity to amend her pleadings to state timely claims against the Moving Defendants. She has pointed to no facts in her opposition to the pending motion which, if pleaded, would cure the defects inherent in these time-barred claims.

## CONCLUSION

For the reasons stated, the claims against Morgan, Huss, and Ishizuka are dismissed with prejudice.

SO ORDERED: