CATHARINE BARHYDT, Executrix, and others, Appellants, v. EDWARD ELLIS, and others, Respondents.

It is only when there is an inconsistency or repugnancy between them, which is irreconcilable, that the written parts of an agreement prevail over the printed.

In cases where, by the mere laches of the creditor, the surety's means of indemnity are impaired, his liability is discharged only to the extent of the loss sustained by reason of such laches.

Where the plaintiff's testator let certain premises by a lease to which he and the lessee alone were parties, in the body of which was inserted a written clause requiring him to give notice to the defendants, the sureties of the lessee, in case the rent should not be paid when due, who were thereupon to have the right upon payment of the rent, to take possession of the premises; and by the sureties' printed agreement signed by the defendants, and annexed to the lease, they agreed to pay upon default of the lessee without any notice of non-payment or proof of demand being made.—*Held*, that the two clauses were not inconsistent, and that the giving of the notice required by the lease, did not constitute a condition precedent to the recovery of the rent from the defendants, on failure of the lessee to pay it.

(Argued January 23d, 1871; decided March 21st, 1871.)

APPEAL from a judgment of the late General Term of the Supreme Court of the Fourth judicial district affirming a judgment dismissing the complaint.

The action was brought to recover of the defendants, as sureties, certain installments of rent of the "Eagle Hotel," Schenectady.

On the 27th of April, 1866, Nicholas Barhydt, now deceased, leased the premises to J. G. Carley, by a lease partly written and partly printed. In the body of the lease were the following written words: "and in case the said

rent is not paid when due, as aforesaid, then the said Barhydt is to notify the Messrs. Ellis, who are surety for the payment of the rent, and they are to have the right to dispossess the said Carley from the said premises, and to take possession of said premises themselves, on payment of said rent, as aforesaid, to said Barhydt."

A printed sureties' agreement annexed to the lease, and signed by the defendants, stipulated that on default by the lessee, they would pay the plaintiff's testator the rent in arrear, *without requiring any notice of non-payment, or proof of demand being made.*

This suit being brought on the failure of lessee to pay rent, the defendants insisted that the notice required in the body of the lease constituted a condition precedent to the recovery of rent from them, and that whatever notice was given was insufficient, and the Special Term having decided in their favor, and that decision being affirmed at General Term, the plaintiff appealed to this court.

*Samuel Hand and Alexander J. Thompson*, for the appellants.

*J. S. Landon*, for the respondents, insisted that plaintiffs were required to give notice. (*Ludlow* v. *Simmond*, 2 Cai. Cases, 1; *Walrath* v. *Thompson*, 6 Hill, 540; *Leeds* v. *Dunn*, 10 N. Y., 469; *McCluskey* v. *Cromwell*, 11 N. Y., 593–598; *People* v. *Vilas*, 36 N. Y., 459; *Miller* v. *Stewart*, 9 Wheat., 702; *Leggett* v. *Humphrey*, 21 How. U. S., 76; *Bonar* v. *McDonald*, 1 Eng. L. & Eq., 1; *N. W. Railway Co.* v. *Whinroy*, 10 Ex., 77.) That surety clause does not waive notice of default. (*Lord Arlington* v. *Merrick*, 2 Saund., 403–411; *Liverpool Water-works* v. *Atkinson*, 6 East., 507; N. Y. "Civil Code," 332, § 1363.) That contracts were to be taken together. (*People* v. *Saxton*, 22 N. Y., 309; *Benedict* v. *Ocean Ins. Co.*, 31 N. Y., 389; *Harper* v. *The Albany Ins. Co.*, 17 N. Y., 194; *Leeds* v. *The Mechanic's Ins. Co.*, 8 N. Y., 351.)

RAPALLO, J.   The stipulation in the lease from Nicholas Barhydt to J. G. Carley, to the effect that, if the rent should not be paid when due, the lessor would notify the sureties, and that they should have the right to dispossess the lessee, and take possession of the premises on payment of the rent, was, in terms, made between the lessor and lessee; but the liability of the lessee for the rent was in no manner dependent upon the observance of that stipulation, or affected by its breach; nor did it form any part of the principal contract, for the performance of which the defendants were sureties, within the intent and meaning of the rule, that a departure from the terms of the principal contract will discharge the sureties.

This stipulation was wholly for the benefit of the sureties, and was doubtless intended to enable them to take possession of the premises on payment of the rent, in respect of which their principal might make default, and thus to protect themselves to some extent against loss by subsequent defaults on his part.

The proper place for this stipulation was in the agreement of suretyship, for if effect can be given to it, it must operate not as between the lessor and lessee, but as between the sureties on the one part, and the lessor and lessee on the other part.

Assuming that the lease and the contract of suretyship are to be construed as one instrument, and that the defendants can claim the benefit of the covenant to give notice as if made in terms with them, the vital question in the case is, whether the giving of the notice was a condition precedent to their liablility for the rent, or whether the covenant to give notice, and the agreement of the sureties to pay the rent, are independent agreements.

It seems to have been taken for granted, on the part of the respondent, that, wherever a guarantor is entitled to notice of the default of his principal, the giving of the notice is necessarily a condition precedent to the enforcement of the liability of the guarantor; and that, therefore, a stipulation on the part of the creditor to give notice of default, and an agreement in

the same instrument, on the part of the guarantor, to pay the debt without such notice, are so inconsistent and irreconcilable that one or the other must be stricken out, or held void.

Unless this position can be maintained, the cases which have been cited, holding that, where an instrument is partly written and partly printed, the written will overrule the printed part, have no application. Effect must be given, if possible, to every part of an agreement; and it is only when there is an inconsistency or repugnancy which is totally irreconcilable, that a discrimination will be made as to which part shall be made to yield to the other. (*Harper* v. *N. Y. City Ins. Co.*, 22 N. Y., 443; *Harper* v. *The Albany Mut. Ins. Co.*, 17 id., 198.)

We are of opinion that there is no such irreconcilable repugnancy in the present case, between the stipulation to give notice and allow the sureties to take possession, and the absolute engagement to pay the rent, though notice should not be given.

If the giving of notice had, by the terms of the contract, been made a condition precedent to the liability of the sureties, then the subsequent clause, dispensing with notice, would be manifestly repugnant, and both could not stand.

But it was competent for the parties to make independent agreements in this respect, and to declare them to be independent.

In this State a guarantor is not, in general, entitled to notice of default of his principal. (*Brown* v. *Curtis*, 2 N. Y., 225; *Van Rensselaer* v. *Miller*, Hill & Denio Supp., 237.) But there is no inconsistency in a surety being entitled to notice of the default of his principal; and yet the consequence of not giving the notice being to exonerate him only to the extent of the damage sustained by reason of the omission.

Judge STORY, in *Wilder* v. *Savage* (1 Story, 22, 35), says: "I take the doctrine to be clearly settled, that, upon a guaranty, to discharge the guarantor, there must not only be a want of notice within a reasonable time, but there must also be some loss or damage sustained by the guarantor, and that,

if there be a loss or damage, the guaranty is not totally discharged, but only *pro tanto*, to the amount of the loss or damage." (See authorities cited, and also *Union Bank* v. *Coster's Executors*, 3 N. Y., 213.)

Mere omissions do not have the same effect as positive acts of the creditor, or dealings between the creditor and principal debtor, whereby the position of the surety is changed. Such dealings are, by the civil law, held to be conclusive evidence of an intention to discharge the sureties; and the extent of the injury will not be inquired into. (Story Eq. Jur., 325, 833.)

But in cases where, by the laches of the creditor, the surety's means of indemnity are impaired, his liability is discharged only to the extent of the loss sustained by reason of such neglect. (*Schræppel* v. *Shaw*, 3 N. Y., 459; *Capel* v. *Brittie*, 2 Sim. & St., 457.)

There seems to be no good reason why these principles should not be applicable to a case where the guarantor is entitled to notice by the terms of his contract, unless, by the reasonable construction of the contract, the giving of the notice is a condition precedent. Even in the absence of the express stipulation to pay without notice, it is not clear that the stipulation to give notice was, under the provisions of this contract, a condition precedent. It was not so made in terms; it did not constitute the whole consideration of the guaranty, and its breach could be paid for in damages. (*Boone* v. *Eyre*, 1 H. Bl., 273, note *a; Jones* v. *Barkley*, Doug., 690; 2 Parsons on Contracts, 5th ed., 525, 528, 676, 677; 3 Kent's Com., 11th Ed., 124.)

These considerations are not conclusive. (1 Seld., 257.) The intent of the parties must govern, but the clause which is sought to be stricken out as repugnant, removes any doubt which might be entertained on the point. It does not relieve the landlord from his obligation to give the notice, or from responsibility for not giving it; but it declares, in substance, that the obligation of the sureties to pay shall not depend upon its being given.

It is possible that the actual intention of the parties may have differed from that expressed in the agreements as executed; but there is no evidence or finding in support of that part of the defendants' answer which seeks a reformation of the instrument on that ground.

It is to be observed, that the object of giving the notice appears by the lease to be, to enable the defendants to take possession of the premises, after default in the payment of rent, and protect themselves against loss from future defaults. Even if the notice were given, they would be obliged to pay the rent in arrear; they were liable for that, at all events.

The delay in giving the notice did not prevent them from taking possession when the notice was in fact given, if they desired to do so, and the agreement gave them the power.

Assuming that they were ignorant of the default of the lessee, the effect of the delay was not to deprive them of their right, if any, to take possession, but simply to lead them to forego its exercise during the period between the default and the giving of the notice, and they may, perhaps, have thereby lost the value of the use of the premises during that period.

Whether they could or would have taken possession, if they had had notice, what would be a reasonable time for giving the notice, and the amount of loss occasioned by the omission, are questions that will arise in case they set up a claim for damages, and need not now be determined.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

Allen, Grover and Folger, JJ., concurred, Church, Ch. J., and Peckham, J., dissented; Andrews, J., took no part.

Judgment reversed and new trial ordered, costs to abide the event.