OPINION OF THE COURT
Bellacosa, J.
We granted leave in this case to decide whether defendant debtor Campcore, Inc.’s default on one installment payment under its promissory note triggered the Statute of Limitations accrual against the entire debt. Upon that initial default in the installment payment, the creditor, Marine Midland Bank, chose not to exercise its option to accelerate the balance of the indebtedness. At issue is Marine’s attempt to recover against a guarantor, Chester Wickwire (Wickwire), on otherwise timely portions of Campcore’s debt. Supreme Court and the Appellate Division ruled that the Statute of Limitations blocked Marine’s reach against guarantor-Wickwire, because Wickwire became obligated to pay the whole debt upon the initial default in a payment by Campcore. On the grant of leave to appeal to Marine, we now reverse the order of the Appellate Division.
I.
In July 1978, appellant creditor Marine loaned Campcore $500,000, secured by a promissory note providing, in part, that "[t]he holder hereof shall have the option to declare the balance due and owing hereunder at any time to be immediately due and payable * * * upon the happening of * * * 1. Nonpayment of any sum of principal or interest on the date which the same shall become due”. The term loan agreement between the debtor and creditor contained a corresponding acceleration option exercisable unilaterally by the creditor bank. Marine later acquired a mortgage from Phoenix Acquisition Corp. and Dome Corp. as security for the loan.
Wickwire guaranteed a portion of the loan as follows: "[T]he undersigned hereby absolutely and unconditionally guaranties *141 the full and prompt payment to Bank when due, whether by acceleration or otherwise, of such indebtedness of the borrower to Bank to the extent of [$105,000] and the unpaid accrued interest thereon.” This guaranty also contained a provision that Marine would notify Wickwire of default in payment of any installment of principal or interest within 30 days after such default. The guaranty further added that "[i]f any default shall be made in the payment of the above indebtedness, the [guarantor] hereby agrees to pay the same to the extent above provided [ ] without requiring protest or notice of nonpayment to the [guarantor]”.
On April 1, 1983, Campcore defaulted on a principal payment of $6,000 plus interest. From October 1983 to October 1987, Campcore made partial payments on other installments on the note, but it never regained currency on the payments of its indebtedness. In January 1988, Marine notified Camp-core that its 1978 term loan had matured and demanded payment in full — the principal balance of $244,593.51 and interest due of $21,190. Litigation ensued in August 1990 when plaintiffs Phoenix Acquisition Corp. and Dome Corp. sought to rescind the mortgage held by Marine securing the loan. In October 1990, as a cross claim in that action, Wick-wire sought a declaration that Marine’s claim on the Wick-wire guaranty was time-barred.
The Supreme Court granted Wickwire’s motion for summary judgment, and the Appellate Division affirmed. In reversing, we hold that separate causes of action accrued as installments of the loan indebtedness became due and payable. We reject guarantor Wickwire’s argument that Creditor-Marine’s action was barred by the Statute of Limitations because any action with respect to the entire debt accrued all at once on April 1, 1983 upon the initial default in an installment payment.
IL
The contractual language fixes the boundaries of the legal obligation of the guarantor. Without acceleration of the entire debt by Marine, Wickwire was liable only for the payment of the installment which was due and payable and in default. The Statute of Limitations began to run only for that discrete obligation and amount. The fact that Marine had a bargained-for, exclusive acceleration option to call the entire indebtedness due immediately upon any default does not, by operation *142 of law, trigger the accrual of a cause of action for portions of the indebtedness which neither the debtor nor the guarantor were then liable to pay.
By the terms of the promissory note and the term loan agreement between Marine and Campcore, payments of principal and interest became due and payable according to a specified repayment schedule. Unless Marine exercised the acceleration option, the balance of the loan was not due and payable by the debtor. The guaranty obligated Wickwire to make "full and prompt payment to Bank when due, whether by acceleration or otherwise” of "indebtedness” of Campcore to Marine, up to the limit of $105,000 plus interest. The Wickwire guaranty is an explicit guaranty of "payment * * * when due”. Therefore, Wickwire became explicitly and contractually liable only for sums which were due and payable.
Wickwire acknowledges that the extent of the debtor’s liability following a single, skipped installment payment would depend on whether the creditor exercised the acceleration option. However, he would contrast the debtor’s limited obligation on a default in a single payment from his broader immediate obligation to pay the entire debt as guarantor, including amounts not accelerated and not yet due and payable by the debtor. Wickwire finds support for this view in particular language of the guaranty, which stipulates that "[i]f any default shall be made in the payment of the above indebtedness, the undersigned hereby agrees to pay the same to the extent above provided”, and contends that the "extent above provided” is the maximum amount of the guaranty, $105,000. The Appellate Division accepted that distinction, finding that "[t]he guarantee provides that Wickwire is obligated to pay the entire debt (up to $105,000) upon 'any’ default by the debtor.” (182 AD2d 1101.)
We do not agree that the language of this guaranty supports an extension of the obligation of the guarantor beyond the indebtedness which is due and payable by the debtor in the first instance. The portion of the guaranty instrument which articulates liability upon "any default * * * to the extent above provided” is part of a paragraph discussing notice requirements. It should not be invoked to add obligations to the substantive guaranty liability. Moreover, the express limitation, "to the extent above provided” should be read, in conjunction with the primary guaranty obligation clause, "when due, whether by acceleration or otherwise”. This liabil *143 ity refers only to amounts due and payable to the limit of $105,000.
Apart from the language of the guaranty, the authorities relied upon to trigger a complete accrual upon any default in these circumstances also falter. General Phoenix Corp. v Cabot (300 NY 87) is concerned essentially with the distinction between a guaranty of payment and a guaranty of collection. That case holds that where a guaranty is one of payment, liability under a guaranty attaches and a cause of action accrues against the guarantor as soon as there is a default by the debtor in the payment of the obligation. Chemical Bank N. Y. Trust Co. v Amory (27 AD2d 730, affd no opn 21 NY2d 832), explicitly concerned a demand promissory note. The Statute of Limitations affecting a note payable upon demand, without doubt, begins to run from the date of its execution (McMullen v Rafferty, 89 NY 456, 459 [1882]). Thus, the holding of Amory, that the obligation of a guarantor attaches and the Statute of Limitations begins to run on execution and delivery of a demand note, does not govern this case. Demand and installment obligations are critically distinct in this context and warrant different considerations and results under the Statute of Limitations’ microscope.
Wickwire would regard Marine’s failure in fact to exercise its option to accelerate against debtor-Campcore as irrelevant in the dispute between the creditor and the guarantor. This is so, Wickwire argues, because a guarantor’s obligations to a lender are "separate and distinct” from those which exist between a lender and a borrower. Wickwire’s position in this Statute of Limitations context is that even though the indebtedness which is guaranteed is not payable by the primary debtor by the terms of the loan agreement, "all of the conditions to the liability of the guarantee have occurred”. However, the law does not so gingerly differentiate between the roles of guarantor and debtor in such a way as to vitiate, for limitations purposes, the fundamental coextensiveness of their substantive obligations (see, McMullen v Rafferty, 89 NY 456, 459, supra). Had Marine exercised its acceleration option following the April 1, 1983 default, it would have triggered an obligation by Wickwire to pay Campcore’s entire indebtedness up to $105,000 and interest. But Marine chose not to do so. Thus, a crucial link in the chain of events surrounding the accrual of the creditor’s claim was left disconnected.
Next, Wickwire presses the point that the policy interests *144 served by the Statute of Limitations override the unexercised acceleration option where an obligation against a guarantor is pursued. These statutes "compel the exercise of a right of action within a reasonable time” (18 Williston, Contracts § 2020, at 673 [3d ed 1978]), to avoid "the disrupting effect that unsettled claims have on commercial intercourse” (Note, Developments in the Law — Statutes of Limitations, 63 Harv L Rev 1177, 1185). However, these important policy values are not without significant competing policy considerations in the circumstances of this case and the kind of commercial transaction at issue here. If a creditor’s action against a guarantor accrues wholly and immediately at the point of the first default in payment — the six-year limitations period for any action against the guarantor clocking in at that point — then creditors would be left with no alternative or incentive but to accelerate the entire debt or risk losing all opportunity to pursue the guaranty. The prudent commercial practice rule would keep in place incentives to the creditor to proceed with some flexibility in working with the debtor based on stipulated contractual provisions. In that dynamic, for example, parties might be able to continue to work toward amicable and fair resolutions between themselves rather than immediately drawing litigation swords and marching off to a courthouse.
Finally, Wickwire presents an alternative basis for affirmance. He claims that a notice requirement in the guaranty was a condition precedent to the enforcement of the guaranty. The guarantor’s bargained-for right to notice is not without significant practical and legal effect. However, the trial court correctly found that the parties did not intend the notice provision contained in this guaranty to serve as a condition precedent and, therefore, that feature of this case does not preclude Marine from enforcing the guaranty (Barhydt v Ellis, 45 NY 107 [1871]). Barhydt involved a guaranty which, like the one at issue here, included inconsistent provisions regarding the effects of a failure to give notice. The Court in Barhydt reconciled the provisions by classifying the notice provision as a positive condition, not a condition precedent to liability. As a positive condition, it might mitigate a creditor’s claim by the amount of damages resulting from the alleged failure to notify. Inasmuch as we are reversing the order of the Appellate Division and denying Wickwire’s motion on summary judgment for dismissal on Statute of Limitations grounds, we also remit the matter to Supreme Court to determine the issue of the positive condition of notice.
*145 Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant Wickwire’s motion to dismiss Marine Midland’s answer or for summary judgment on its cross claim denied.
Chief Judge Kaye and Judges Simons, Titone and Smith concur; Judge Hancock, Jr., taking no part.
Order reversed, etc.