Finova Capital Corp. v. Hotel Pharmacy, Inc., No. 558-12-03 Wmcv  (Carroll, J., Apr. 19, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

[Karen R. Carroll, Judge, Apr. 19, 2005]

**STATE OF VERMONT**
**WINDHAM COUNTY, SS.**

**FINOVA CAPITAL CORPORATION,**
          **Plaintiff,**


               **v.**                         **WINDHAM SUPERIOR COURT**
                                              **DOCKET NO. 558-12-03Wmcv**


**HOTEL PHARMACY, INCORPORATED,**
**and MARY GIAMARTINO,**
          **Defendants.**


**ORDER AND OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff FINOVA Capital Corporation ("FINOVA")  seeks to recover damages for breach of a 1994 financing lease which Hotel Pharmacy, Incorporated ("Hotel Pharmacy") signed, and for which Mary Giamartino gave a personal guaranty, with its predecessor in interest, TriCon Capital Corporation ("Tricon").  Defendants move for summary judgment on statute of limitation grounds.[1]  FINOVA seeks judgment of $37,193.33 plus interest, attorney's fees and costs of court.  Summary judgment is appropriate where there are no genuine issues of material fact and a party is entitled to judgment as a matter of law.  V.R.C.P. 56(c).  When reviewing the motion, the court must give the benefit of all reasonable doubts and inferences to

the nonmoving party.  Select Design, Ltd. v. Union Mutual Fire Insurance Co., 165 Vt. 69 (1996). Concluding that the statute of limitations bars some but not all of FINOVA's cause of action and that FINOVA is otherwise entitled to judgment, both motions are **DENIED** in part and **GRANTED** in part.

## Factual and Procedural Background

The material facts in this case are not disputed.  Some are drawn from the parties' statements of undisputed fact, some from the pleadings and others from documents submitted with them.  On September 27, 1994, Hotel Pharmacy entered into a financing lease agreement with TriCon, for the lease of an interactive kiosk system marketed by Recomm International Display Corporation, Ltd. or one of its affiliates (collectively, "Recomm").  Mary Giamartino signed the lease on behalf of Hotel Pharmacy and as a personal guarantor.  Tricon provided the financing and Hotel Pharmacy received the kiosk.

Under the terms of the original lease, Hotel Pharmacy was obligated to make 60 monthly payments of $466.00.  The term of the lease commenced on the date that equipment was delivered and continued "until [the lessor has ] met all of [its] obligations under the lease."  The equipment was leased "AS IS" and without any warranties, express or implied.  Under paragraph 4, the lease was "NON-CANCELLABLE" by the Hotel Pharmacy.  Pursuant to paragraph 12, the lease stated:

---

[1]Defendants were granted permission to amend their answer on December 20, 2004, to

2

add the statute of limitations defense.

> If you do not pay rent when due or if you break any of your promises under this lease, or you become insolvent, assign your assets for the benefit of your creditors, or enter voluntarily or involuntarily a bankruptcy proceeding, you will be in default. If your default is caused by your failure to make any payment when due, we can require that you return the equipment to us and pay to us the remaining balance of all of the rental payment due under this lease, present valued using a six (6%) percent per year discount rate.

Under paragraph 12, Hotel Pharmacy also agreed to pay damages and attorney's fees incurred by the lessor in the event of default. Pursuant to paragraph 13, Hotel Pharmacy agreed that any delay or failure to enforce Tricon's rights under the lease does not prevent Tricon from enforcing its rights at a later time. Finally, under paragraph 17, the lease states

> In the event you failed to comply with any part of this lease, we can, but we do not have to, take any action necessary to effect your compliance upon ten (10) days prior written notice to you.

The lease itself is a two-page document which includes the terms of the personal guaranty in a section on the first page immediately below the signature boxes for the principal parties. In relevant part, the guaranty provides the following:

> I irrevocably guarantee that the lessee will make all payments and pay off the other charges required under this lease when they are due and will perform all other obligations under the lease fully and promptly. This guaranty shall be a guaranty of payment and performance and not of collection. I also agree that you may make other arrangements with the lessee and I will be responsible for those payments and other obligations. I will immediately pay in accordance with the default provisions of the lease all sums due under the original terms of the lease and will perform all other obligations of lessee under the lease.

In January 1996, Recomm filed for bankruptcy protection pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida. Both Hotel Pharmacy and Giamartino received notice of the Fourth Amended Plan filed by FINOVA, as Tricon's successor in interest, as well as certain other lease finance companies in the Recomm bankruptcy case, and the bankruptcy court's Confirmation Order regarding the

4

same.   Under the terms of the Fourth Amended Plan, Hotel Pharmacy's lease agreement was modified.  Defendants concede that the Fourth Amended Plan determined important rights under the lease.  It adjudicated the lease to be valid and binding and barred Hotel Pharmacy from making any claims against FINOVA for incidents that occurred prior to June 30, 1998.  In addition, the plan modified the lease payment schedule taking into consideration both Hotel Pharmacy's history of nonpayment and a general discount.  Thereafter, Hotel Pharmacy was required to make 82 consecutive monthly payments of $409.50 beginning August 28, 1998, and one final payment of $384.16 on June 28, 2005.

Neither Hotel Pharmacy nor Giamartino ever paid any amounts due pursuant to the modified lease.  On December 18, 1998, FINOVA sent Hotel Pharmacy a letter which reviewed the revised lease terms made applicable under the bankruptcy and advised, as no payment had been received since the reorganization, those payments were now past due and owing.  In addition the letter stated

> Unless you bring this Lease current, FINOVA will accelerate all future payments under the Lease, to the extent allowed by law and as revised by the terms of the Plan.  FINOVA may also bring an appropriate legal action against you to enforce your obligations under the Lease and to collect the amounts owed, including interest, late charges and attorney's fees.

Hotel Pharmacy was  instructed to remit all payments which had been previously invoiced within ten days.  FINOVA sent another letter on May 25, 1999.  This letter was addressed to Mary Giamartino and set out the amounts then past due on Hotel Pharmacy's lease.  As in the first letter, FINOVA advised

> If payment for the full past due amount is not received in our office within ten days, the terms of the lease provide that FINOVA may accelerate and demand **immediate payment** of all payments required under the lease (as modified by the Plan).

After FINOVA initiated this law suit, Defendants raised five affirmative defenses which included laches, failure of consideration, lack of notice of modification, estoppel and fraud. Plaintiff moved for declaratory relief in the bankruptcy court seeking a determination that all five defenses were invalid and barred under the terms of the 4th Amended Plan. The parties signed a Consent Order, filed in United States Bankruptcy Court on February 11, 2005, clarifying that the affirmative defenses were barred to the extent they related to time, conduct or events which occurred before June 30, 1998.

**Defendants' Motion for Summary Judgment**

Defendants' motion rests on a statute of limitations defense. Under 9A V.S.A. § 2A-506(1), an action for default under a lease contract must be brought within four years after the cause of action accrued. The parties agree that this is the applicable statute of limitations for FINOVA's claims against Hotel Pharmacy but disagree as to what conduct starts the statute running. Under section 2A-506(2), a cause of action for default accrues when the act or omission on which the default is based is or should have been discovered by the aggrieved party or when the default occurs, whichever is later. Under the terms of the lease in this case, Hotel Pharmacy defaulted every time they missed a monthly payment. The failure to make a lease payment was clearly indicated as a basis for default in the original lease and the amount and timing of monthly payments was fixed under the modified terms. Each of the periodic defaults occasioned by Hotel Pharmacy's failures to make a monthly payment invoked the statute of limitations for a new cause of action. See Phoenix Acquisition Corporation v. Campcore, Inc., 612 N.E. 2d 1219, 1220 (N.Y. 1993)(separate causes of action accrue as installments of loan

6

indebtedness become due and payable); Vreede v. Koch, 380 S.E. 2d 615, 616 (N.C. Ct. App. 1989)("The general rule regarding the running of the statute of limitations for installment contracts is that the limitations period begins running from the time each individual installment becomes due.").

Plaintiff's reliance on C&T Discount Corp. v. Sawyer, 123 Vt. 238 (1962), for its claim that no default occurred until suit was brought is misplaced. C&T Discount does not, as Plaintiff contends, stand for the holding that the statute of limitations does not begin to run on an installment contract with fixed payment schedule and an optional acceleration clause until the lessor either invokes the acceleration clause or otherwise demands satisfaction. Only in the case of a note under which the terms of repayment are unspecified and optional must the payee take affirmative action to call for payment before some default will occur. "When the instrument itself indicates that the calls for payment were to be indefinitely prospective, and to be made as might suit the wants and convenience of the payee, there is no ground furnished upon which the law can assume any fixed point as a limit to reasonable time for making a demand, and therefore give operation to the statute of limitations." Id. at 241 [citing Stanton v. Estate of Stanton, 37 Vt. 411 (1865)]. By contrast, the agreement in this case provided for monthly fixed points at which performance was required and from which the failure to perform could be easily measured.

It is true, however, that the original lease did make provisions for optional acceleration. Under the terms of paragraph 12, FINOVA was entitled, upon Hotel Pharmacy's failure to make any payment due, to "require that [Hotel Pharmacy] return the equipment to us and pay to us the **remaining balance** of all of the rental payment due under this lease...."(emphasis added). If the acceleration clause was invoked, the entire debt would have been payable and the statute of

7

limitations would have commenced running on the full amount. An acceleration clause is for the obligee's benefit and gives the obligee the option of being able to sue on the entire debt without waiting for the obligor to default on each individual installment. Vreede, 380 S.E. 2d at 616. It is Defendants' position that FINOVA invoked the acceleration clause twice, once in its letter to Hotel Pharmacy and again in its letter to Giamartino. While the Court agrees that these letters warned Defendants that FINOVA had the option to accelerate and indicated that FINOVA might exercise that option if no payment was received in ten days time, it does not agree that either of these letters actually exercised FINOVA's acceleration option.

In Fruehauf Trailer Co. v. George, 121 Vt. 318 (1960), the Vermont Supreme Court considered language like the kind used in FINOVA's letters. The following language appeared in a letter from the plaintiff to the defendant:

> The May 15 installment of $ 112.13 is past due and unpaid. Under the circumstances you leave us no alternative but to take advantage of the acceleration clause in the conditional sales note signed by you which we hold. Under that clause we are demanding immediate, complete payment of your note.
>
> Unless you comply with this demand, we will proceed with repossession, foreclosure and judgment.

Id. at 319. Although the court affirmed judgment for the plaintiff for the total amount due under the contract, it declined to find that anything more than a threat of repossession or foreclosure had occurred. Id. at 320. Notwithstanding the claims made in the letter in that case, the plaintiff remained free to change its mind and adopt a different cause of action. Similarly, FINOVA's statements that it "will accelerate all future payments...." and that it "may accelerate and demand immediate payment of all payments" if no payment was received were conditional statements of future intent, not indications of present and definite action. As such they were insufficient to

8

invoke the operation of the acceleration clause under paragraph 12. See Vrede, 380 S.E. 2d at 617 ("A mere mental intention to declare the full amount due is not sufficient.")(citation omitted).

Defendants also contend that a clear and unequivocal repudiation of a contract by the obligor will start a single limitations period running for the entire balance due on an installment contract. Without considering Defendants' further claim that it made a clear and unequivocal repudiation when the newly delivered kiosk failed to operate as promised, the Court rejects the theory under the terms of the contract as well as the terms of the 4th Amended Plan. Hotel Pharmacy's financing lease included a clear provision making the contract non-cancellable. The lease also provided that the only object of complaints about the satisfaction of equipment supplied under its terms was the vendor, Recomm. Under these conditions, and without any claim that the underlying terms are unenforceable, the Court fails to see why any repudiation by Hotel Pharmacy would have been effective. Moreover, under the terms of the Fourth Amended Plan, Defendants lost their rights to challenge the validity of the lease or to complain of problems that occurred prior to June 30, 1998. For all these reasons, Defendants' claimed repudiation is immaterial to the statute of limitations.

Having concluded that there was neither an invocation of the acceleration clause nor valid repudiation such as might have otherwise accelerated the lease agreement, the Court finds that the applicable statute of limitations began to run each month when Hotel Pharmacy failed to remit payment. This means that Plaintiff's opportunity to bring a cause of action as to any of those individual defaults which occurred more than four years prior to the commencement of this law suit on December 22, 2003, has expired. Therefore, as to any payments owed under the

9

lease prior to December 22, 1999, Hotel Pharmacy is entitled to judgment as a matter of law.

This leaves some question as to whether the same statute of limitations applies to Giamartino under the personal guaranty. FINOVA contends that the four-year statute contained within Article 2A only applies to the lease agreement. According to the FINOVA the personal guaranty is a separate contract which is governed by the standard six-year statute of limitations for civil actions pursuant to 12 V.S.A. §511. For support, FINOVA cites Huntington v. McCarty, 174 Vt. 69, 71 (2002), a case affirming that the extinguishment of a debt on a promissory note under the statute of limitations does not extinguish the mortgage which secures it. The court in that case reasoned that the statute of limitations bars the remedy on the note but not the debt which underlies it. Id. at 72. It also focused on the nature of the mortgage:

> In the case of a promissory note secured by a mortgage, however, the impetus of securing a debt with a mortgage is to provide the mortgagee with certain protections that the promissory note alone does not provide. Among these protections, to which both parties to a mortgage implicitly agree, is an extended statute of limitations which allows a mortgagee to enforce the debt beyond the life of the promissory note. In such case, it is entirely within a defendant's "reasonable expectations," that they are bound to the terms of the mortgage for a period of fifteen years after the defendant defaulted on the mortgage.

Id.(citation omitted).

Defendants contend, and this Court agrees, that the personal guaranty signed by Giamartino is of a very different nature than the mortgage referred to in Huntington. The personal guaranty was not an independent document or contract that exists either figuratively or literally without the lease agreement. It was recorded on the face of the lease itself and depends on the lease for the definition of its essential terms. Because the guaranty was a completely dependent agreement, it is more appropriate to apply the same statute of limitations to both

10

agreements. This conclusion is consistent with the law in other jurisdictions which apply the same statute of limitations to a guaranty as to the underlying contract. See Bernd v. Lynes, 43 A. 189 (Conn. 1899)(cause of action cannot exist against guarantor unless it exists against principal debtor); D'Annolfo v. D'Annolfo Construction Co., 654 N.E. 2d 82 (Mass. App. Ct. 1995) review denied 421 N.E. 2d 1258 (Mass. 1995)(after adoption of U.C.C. provisions, statute of limitations protects guarantor liable on note as if he were co-maker); Phoenix Acquisition Corporation, 612 N.E. 2d at 1221 ("[T]he law does not so gingerly differentiate between the roles of guarantor and debtor in such a way as to vitiate, for limitation purposes, the fundamental coextensiveness of their substantive obligations."). Accordingly, the Court concludes that for any payments owed under the lease prior to December 22, 1999, Giamartino is also entitled to judgment as a matter of law.

Plaintiff's Motion for Summary Judgment

Having addressed Defendants' arguments regarding the statute of limitations, the Court turns to Plaintiff's Motion for Summary Judgment. In its answer, Defendants raised a number of affirmative defenses which they now concede in light of the operation of the Amended Fourth Plan. Defendants raise no new defenses and have not otherwise challenged the material facts underlying FINOVA's claims that they are both liable and in default under the modified lease. See Mello v. Cohen, 168 Vt. 639, 641 (1998)(party adverse to summary judgement may not rest upon mere allegations or denials of adverse party's pleading). Accordingly, the Court concludes that FINOVA is entitled to judgment as a matter of law but only as to those portions of the lease agreement which became due and payable after December 22, 1999.

11

## **ORDER**

Wherefore, for the reasons set out above, the Defendants' Motion for Summary Judgment is **GRANTED** as to defaults which occurred prior to December 22, 1999 and **DENIED** as to those which came after.  The Plaintiff's Motion for Summary Judgment is **DENIED** as to those defaults which occurred prior to December 22, 1999 and **GRANTED** as to those which came after.  Plaintiff is directed to propose a new calculation and judgment order  to reflect judgment consistent with this Order.

Dated at Newfane, Vermont, this \_\_\_ day of April, 2005.

_____
Karen R. Carroll
Presiding Judge