PARSONS & WHITTEMORE ENTER-PRISES CORP., Parsons & Whitte-more Inc., George Landegger, Eva Landegger, Plaintiffs

v.

Arthur L. SCHWARTZ, Defendant

No. 03 CIV. 873(SCR).

United States District Court,
S.D. New York.

Sept. 6, 2005.

Edward M. Spiro, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York, NY, for Plaintiffs.

Kevin M. Downey, Williams & Connolly LLP, Washington, DC, for Defendant.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. Background:

#### A. Statement of Facts:

Parsons & Whittemore Enterprises ("PWE"), Parsons & Whittemore, Inc. ("P & W"; PWE and P & W are collectively referred to herein as, the "P & W Entities"), and George and Eva Landegger ("Landeggers"; the P & W Entities and the Landeggers are collectively referred to herein as the "Plaintiffs") brought this action against Arthur Schwartz (the "Defendant") seeking damages for fraud and other related causes of action.

P & W, a New York corporation, owns and operates pulp mills in the United States and Canada. PWE, the corporate parent of P & W, is a closely-held holding company; George Landegger owns a majority of the shares of PWE. P & W, an operating subsidiary, is the federal taxpayer for all PWE affiliates.

Arthur Schwartz (the "Defendant") began working for the P & W Entities following the death of Mr. Landegger's father in 1976, when the Defendant's law firm was selected to oversee his estate. During that year, the Defendant became employed by P & W as its tax counsel. In the 1980s, the Defendant became George Landegger's primary investment and legal advisor, and was named the co-executor of Mr. Landegger's estate, the trustee of the Landeggers' trusts and the successor guardian of their minor children. By the late 1980s, the Defendant had been promoted to President and Chief Operating Officer of P & W and its affiliates.

On December 15, 1988, P & W and Schwartz executed an employment agreement. From July 1995 until April 29, 2002, the date of his termination, the Defendant was employed pursuant to a detailed six-page employment agreement (the "Employment Agreement"). Pursuant to that July 1995 Employment Agreement, the Defendant was the President and Chief Operating Officer of P & W.

The facts alleged by the Plaintiffs and Defendant differ, but it is clear that, for a number of years between 1991 and 2001, the Landeggers either did not file their federal or state income tax returns in a

timely fashion, or did not file them at all. There are disputed issues as to why such returns were not filed, or timely filed as the case may be, and who was responsible for the failures.

Plaintiffs contend that the Defendant failed to file their federal and state tax returns in a timely fashion, despite his repeated assurances that he had done so. Plaintiffs also accuse Defendant of misapplying corporate money to pay taxes, penalties and interest assessed against Plaintiffs because of his wrongdoing, misappropriating money belonging to the Landeggers and the Parsons plaintiffs, embezzling corporate funds to satisfy his own tax liabilities, and generally abusing his position in the company and his relationship with the Landeggers.

At some point in 2002, the IRS discovered the tax irregularities and, during the course of the IRS inquiry, the Plaintiffs and Defendant blamed each other. The Defendant was terminated as President and Chief Operating Officer of the P & W Entities on April 29, 2002.

### B. Procedural History:

As initially pleaded, the Plaintiff's Complaint consisted of fifty-seven pages, one hundred sixty-six paragraphs and fourteen causes of action against the Defendant. The Landeggers asserted five of the causes of action, including (1) Fraud; (2) Breach of Fiduciary Duty; (3) Conversion; (4) Negligence; and (5) Malpractice. The other nine causes of action were asserted by the P & W Entities. Specifically, they alleged: (1) Fraud; (2) Fraud in the Inducement; (3) Breach of Fiduciary Duty; (4) Breach of Duty of Good Faith and Loyalty; (5) Breach of Contract; (6) Conversion; (7) Unjust Enrichment; (8) Money Had and Received; and (9) Money Owed Under a Promissory Note.

In May 2003, the Defendant moved to dismiss the Complaint. By order dated January 6, 2004, the court denied the motion, except with respect to the P & W Entities cause of action for fraudulent inducement, which was dismissed. On March 3, 2004, Plaintiffs filed an amended complaint, which the Defendant answered on March 18 by asserting his Fifth Amendment privilege against self-incrimination.

In November 2004, Plaintiffs filed a motion for summary judgment arguing that the Defendant's invocation of his Fifth Amendment privilege, and therefore his refusal to provide testimony, does not preclude summary judgment because there are no genuine disputes of material fact with respect to Defendant's liability on any of Plaintiffs' remaining causes of action in the case. Plaintiffs have made this motion, which is based primarily on affidavits submitted by the Landeggers and other P & W employees, even though no discovery has taken place in this case.

## II. Analysis

### A. Standard of review:

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only when "there is no genuine issue as to any material fact[.]" FED. R. CIV. P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

█ As mentioned, Defendant has responded to Plaintiffs' claims in part by invoking his Fifth Amendment privilege. Although the Fifth Amendment precludes drawing adverse inferences against defen-

dants in criminal cases, it "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). Therefore, the Plaintiffs may ultimately be entitled to an instruction that the jury may draw adverse inferences against the Defendant on each issue as to which he has asserted his Fifth Amendment privilege. *Cf. LiButti v. United States,* 107 F.3d 110, 123–24 (2d Cir.1997) (setting forth factors relevant to a determination of whether an adverse inference may be drawn on the basis of a non-party's invocation of his or her Fifth Amendment privilege). But even assuming that a jury might draw such inferences, the court is still required at *summary judgment* to draw all reasonable inferences in favor of the non-moving party. *See Stichting Ter Behartiging v. Philippe S.E. Schreiber, et. al.,* 407 F.3d 34, 55 (2d Cir.2005).

### B. Landeggers' Causes of Action

### 1. Whether The Plaintiffs Have Established That The Defendant Had A Duty To File The Landeggers' Personal Tax Returns

■ The Landegger Plaintiffs have asserted three causes of action—breach of fiduciary duty (count two), negligence (count four), and malpractice (count five)—that require proof establishing that the Defendant had a duty to file the Landeggers' personal tax returns. Defendant contends that genuine issues of material fact remain as to whether in fact he had such a duty.

■ Plaintiffs contend that Schwartz undertook to prepare and file the Landeggers' personal federal and state tax returns for the years 1977 through 2000 and was, as a result, their agent for that purpose. Defendant responds that genuine questions remain as to whether there was any contract between the Landeggers and Schwartz. In support of this position, Defendant points to several facts in the record. First, Defendant points out that the 1988 and 1995 employment agreements signed by Mr. Landegger and Schwartz do not require that Schwartz prepare the Landeggers' personal returns and, on the contrary, explicitly preclude him from working for anyone except P & W. Second, Defendant notes that Plaintiffs have provided no clear evidence of any specific oral agreement entrusting the Defendant with the preparation of personal tax returns, but instead have generally alleged that the task of filing the Landeggers' personal returns was entrusted to Schwartz in or around 1977. Moreover, Defendant notes that at least some of the Landeggers' tax returns, which have been submitted as part of the record, do not indicate that the Defendant, or in fact any individual, was the preparer of the returns.

In response, Plaintiffs argue that their claims are based not solely on the existence of an attorney-client relationship, but also on other duties, including fiduciary duties based on agency principles and the duty of reasonable care to perform an undertaking competently. This response, however, is inadequate to justify summary judgment. The facts cited by the Defendant raise questions about whether Schwartz had a duty of any kind to file and process the Landeggers' personal returns. If Plaintiffs were not forced to establish that the Defendant had the responsibility for filing the returns, anyone could conceivably be held responsible for the failure to timely and accurately file them.

Plaintiffs also argue that they have nevertheless provided ample, uncontested evidence to justify summary judgment in their favor. In particular, they point to affidavits submitted by several individuals,

including the Landeggers, several other P & W employees, and Leon Reimer, an accountant retained in 2002 to analyze the Landeggers' tax returns, all of which attest to their belief that the Defendant did in fact have the responsibility. These affidavits undoubtedly constitute strong evidence, but they do not resolve all outstanding questions of material fact, particularly since they are, for the most part, affidavits submitted by either named plaintiffs themselves or by P & W employees. As such, Plaintiffs' motion for summary judgment, with respect to the Landeggers' claims of breach of fiduciary duty, negligence, and malpractice must be denied at this time.

### 2. Whether Plaintiffs Have Established That The Landeggers' Reliance On The Defendant's Allegedly Fraudulent Statements Was Reasonable

■ To prove fraud under New York law, "a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir.1995). Defendant argues that Plaintiffs have failed to establish, for the purposes of summary judgment, that their reliance on Defendant's statements was reasonable.

■ Defendant is correct. First, logic dictates that the issues that preclude the court from finding that the Defendant had a duty to file the Landeggers' personal returns also raise questions about the reasonableness of the Landeggers' reliance on the Defendant's statements. And even assuming, *arguendo*, that the Defendant had the duty, the Defendant has pointed to facts that raise additional questions about the reasonableness of the Landeggers' reliance.

George Landegger acknowledges that, throughout a several year-long period, he received numerous notices from the IRS indicating that there were problems with his compliance with the tax laws. Mr. Landegger's only response to these notices seems to have been to inform the Defendant about them and, as such, to rely on him to solve any problems. Although a juror could surely find that Mr. Landegger's reliance on the Defendant, a close friend and (allegedly) the Landeggers' tax attorney, was reasonable, a juror could also find that, at least at some point during this several-year long relationship, Mr. Landegger should have personally intervened more directly. *cf. McMahan v. Commissioner*, 114 F.3d 366, 371 (2d Cir. 1997) (the alleged misrepresentations of a taxpayer's attorney do not relieve the taxpayer of his duty, under the federal tax law, to ensure that his tax return was filed on time; reliance solely on the tax attorney in such circumstances does not constitute ordinary business care).[1]

---

**1.** This court, like the Second Circuit in *McMahan*, recognizes that reliance on a mistaken legal opinion of a competent tax adviser—a lawyer or accountant—that it was unnecessary to file a return can constitute reasonable cause. *See McMahan*, 114 F.3d at 369. But unlike substantive issues of tax law for which a taxpayer must rely on an expert, certain obligations, such as the deadline for filing a return, are sufficiently minis-

terial in nature to be unambiguous and easily ascertainable and, for such tasks, reliance on erroneous advice does not constitute reasonable cause. *See id.* at 369. In this case, Plaintiffs have accused the Defendant of failing to competently perform a full range of tasks associated with the filing of returns, some of which likely involved complex legal analysis, but some of which could surely

In response, Plaintiffs emphasize that their case involves a long-standing close, personal relationship between taxpayer and tax attorney—not an arms length relationship between client and service provider. The nature of the relationship between the Landeggers and the Defendant may well bolster the Landeggers' argument that their reliance was reasonable, but it does not definitively resolve all questions of material fact.[2]

As such, Plaintiffs' motion for summary judgment with respect to the Landeggers' claim for fraud must be denied at this time.

### 3. Whether Plaintiffs Are Entitled To Summary Judgment On The Landeggers' Conversion Claim

■ New York law defines conversion as "any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *See Atlanta Shipping Corp. v. Chemical Bank*, 818 F.2d 240, 249 (2d Cir.1987) citing *Meese v. Miller*, 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (4th Dep't 1981). In support of their claim, Plaintiffs cite affidavits indicating that Mr. Landegger never received dividend checks issued to him, and that the checks were ultimately found, uncashed, in Mr. Schwartz's office.

■ The court finds, for several reasons, that this record is inadequate to justify summary judgment for the Plaintiffs at this time. The same questions concerning the nature of the relationship between the Landeggers and the Defendant pre-clude the court from finding that the Defendant's alleged possession of the checks was unauthorized. Moreover, the fact that at least some of the checks were uncashed raises questions about who was in possession of the money and, more importantly, who and what it was used for, if in fact it was used at all. For these and other reasons, summary judgment on the Landeggers' conversion claim is inappropriate at this time.

### C. P & W Entities' Causes of Action

### 1. Whether The P & W Plaintiffs Are Entitled To Summary Judgment With Respect To Its Fraud Claim

■ As discussed, a valid claim of fraud requires proof that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Banque Arabe et Internationale D'Investissement*, 57 F.3d at 153. Plaintiffs argue that the P & W Entities are entitled to summary judgment on their claims. Specifically, they claim that the Defendant caused these entities to issue checks to various taxing authorities to satisfy the Landeggers' personal tax liability, and that he utilized more than $135,000 in P & W funds to satisfy his own tax liabilities. Plaintiffs claim that the Defendant concealed this misappropriation of corporate assets by withholding $1.4 million in dividend checks from Mr. Landegger.

have been understood by lay individuals such as the Landeggers.

**2.** In support of this argument, Plaintiffs cite a series of bankruptcy court cases for the proposition that a long standing friendship or close personal relationship weighs heavily in favor of finding reasonable reliance. *See, e.g., Kuper v. Spar (In re Spar)*, 176 B.R. 321, 328 (Bkrtcy.S.D.N.Y.1994). But none of these decisions involved the application of the standard for summary judgment.

Defendant argues that summary judgment is not appropriate because there is insufficient evidence on which to conclude that the P & W Entities' reliance on Defendant's representations was reasonable. The court agrees. Although there is evidence indicating that the Defendant had some duties with respect to the P & W Entitles' affairs, questions remain regarding the nature of the Defendant's relationship with the P & W Entities and with its other principal officers and shareholders, such as the Landeggers. Specifically, a reasonable jury could disagree about whether it was reasonable for the P & W Entities to have been unaware of alleged frauds involving large amounts of money belonging largely to a small number of shareholders of a close corporation.[3]

Given the closely-held nature of the corporate entities at issue, many of the questions surrounding the Defendant's relationship with the Landeggers, *see* § B.3 *supra*, are also present in the context of his relationship with the P & W Entities. As such, summary judgment on the P & W Plaintiffs' fraud claim is inappropriate at this time.

## 2. Whether The P & W Plaintiffs Are Entitled To Summary Judgment On Their Claims Of Breach of Fiduciary Duty And Breach Of Good Faith

■ Plaintiffs contend that the Defendant's conduct, as described above, violated the fiduciary duties that he owed the P & W Entities as their employee, officer and director. The Defendant does not contest the evidence establishing the Plaintiffs' prima facie case with respect to these claims, but rather argues that summary judgment is inappropriate for one of two alternative reasons: if the Landeggers have repaid the P & W Entities for any funds used to satisfy their personal tax liabilities, then the corporate Plaintiffs have suffered no injury, but if the Landeggers have not repaid the amounts, then these claims are barred by the doctrine of unclean hands. Defendant's arguments are not persuasive.

Whether or not the P & W Entitles have been reimbursed for their losses is relevant to the amount of their damages—not whether or not they have been damaged. The Defendant has cited no authority for the proposition that the reimbursement of the Plaintiffs' losses, either by the Defendant or, as in this case, by other Plaintiffs, precludes a finding that the Plaintiffs have been damaged.

■ Moreover, the Defendant's unclean hands argument is also unpersuasive. As Plaintiffs point out, the Defendant cannot rely on the doctrine of unclean hands in a case such as this. *See Security Pacific Mortg. & Real Estate Services, Inc. v. Canadian Land Co. of America, N.V.*, 690 F.Supp. 1214, 1224 (S.D.N.Y.1988) (citing *National Distillers and Chemical Corp. v.*

---

**3.** Defendant cites several cases for the proposition that a party cannot justifiably rely on allegedly false representations if the party knew the truth or could have ascertained the truth through the exercise of ordinary diligence. *See, e.g., Stuart Silver Assocs. v. Baco Dev. Corp.*, 245 A.D.2d 96, 665 N.Y.S.2d 415, 417–18 (1st Dept. 1997). Plaintiffs contend that there is no such 'ordinary diligence' requirement in the context of a long-term relationship of personal trust, such as the relationship between the Landeggers and the Defendant. In support for this argument, Plaintiffs cite various cases, all of which involve a bankruptcy's judge's application of the bankruptcy code and none of which holds that the due diligence requirement is excused as a matter of law. *See, e.g., In re Braizblot*, 194 B.R. 14, 20–22 (Bkrtcy. E.D.N.Y.1996). These cases are, therefore, not particularly helpful to this court in adjudicating Plaintiffs' motion for summary judgment.

*Seyopp Corp.*, 17 N.Y.2d 12, 267 N.Y.S.2d 193, 214 N.E.2d 361, 362 (1966) (party seeking to invoke doctrine of unclean hands must have been injured by challenged conduct)).[4]

Therefore, Plaintiffs are entitled to summary judgment on the issue of liability with respect to the P & W Entities' claims for breach of fiduciary duty and breach of good faith

### 3. Whether The P & W Plaintiffs Are Entitled To Summary Judgment On Their Breach Of Contract Claim

■ Plaintiffs argue that the Defendant's conduct constituted a breach of his employment agreements with the P & W Entities. The Defendant's first contract, dated December 15, 1988, provided that "dishonest or fraudulent actions or willful misconduct" would be cause for termination, while the second contract, dated July 24, 1995, provided that a "theft or property of the Company or a subsidiary or affiliate" would constitute cause. Plaintiffs contend that the Defendant's conduct constituted both dishonest or fraudulent misconduct and a theft of property and thus violated both agreements.[5] The Defendant's responses are once again unpersuasive.

First, Defendant argues that summary judgment is inappropriate because the only evidence presented by the Plaintiffs is an affidavit by Mr. Landegger. The court disagrees with this characterization of the record but, even assuming it is accurate, it does not imply that summary judgment is inappropriate. In addition, the Defendant contends that Plaintiffs have no evidence that the Defendant concealed his alleged breaches of contract but, even assuming this is true, it is separate from the question of whether there were in fact breaches of contract that have now been discovered. Finally, Defendant argues that Plaintiffs are barred by the "unclean hands" doctrine from asserting this claim as well but, for reasons set forth above, the Defendant cannot properly rely on this doctrine.[6]

Therefore, the P & W Entities' are entitled to summary judgment on their breach of contract claims.

### 4. Whether The P & W Plaintiffs Are Entitled To Summary Judgment On Their Conversion Claim

Plaintiffs argue that the Defendant is liable for conversion, because he used company funds to satisfy both the Landeggers' and his own personal tax obligations. In response, the Defendant repeats its argument that summary judgment is not appropriate until it is determined whether

---

**4.** Plaintiffs also contend that, by violating his fiduciary duties, the Defendant forfeited all compensation he received from the P & W Entities during the course of his employment. *See Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200–01 (2d Cir.2003). Defendant argues that forfeiture is not appropriate because, misconduct aside, the Defendant was, for many years, an effective corporate officer for the P & W entities. The court finds that the issues of whether the Defendant forfeited his earnings and, assuming he did, the amount of earnings that he forfeited, may be resolved at the damages stage of this litigation.

**5.** Defendant points out, and Plaintiffs do not dispute, that Plaintiffs must show that Defendant violated the terms of both agreements in order to establish a claim for breach of contract.

**6.** Defendant also argues, without citing any relevant authority, that Plaintiffs' only valid claims in this case must be tort claims, not breach of contract claims. This argument is also unpersuasive.

the Landeggers' returned the funds or if the claim is barred by the doctrine of "unclean hands." But this argument is no more persuasive in the context of the conversion claim than it is in the context of any other claims.[7]

Therefore, the P & W Entities are entitled to summary judgment on their claim for conversion.

### 5. Whether The P & W Plaintiffs Are Entitled To Summary Judgment On Their Claims For Unjust Enrichment And Money Had And Received

 Plaintiffs argue that the court should find the Defendant liable for both unjust enrichment and money had and received, which have similar elements. The elements of unjust enrichment are that the defendant benefited, at Plaintiffs' expense, and that equity and good conscience require restitution. *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir.2000). To maintain an action for money had and received, New York law requires the following elements: "(1) defendant received money belonging to plaintiff; (2) defendant benefited from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank,* 731 F.2d 112, 125 (2d Cir.1984). Plaintiffs claim that the Defendant benefited in two ways: by appropriating P & W money to pay his own taxes, and by receiving salary, bonuses and other compensation even while performing his duties in a disloyal manner.

Defendants contend that the Plaintiffs have not proven that the Defendant appropriated the $135,000 or that the Defendant should be made to forfeit all the compensation he received during his employment. Nevertheless, for reasons set forth above, the court finds that the Plaintiffs have established liability for unjust enrichment and money had and received. The extent of damages may be determined at a later time.

### 6. Whether The P & W Plaintiffs Are Entitled To Summary Judgment On Their Claim For A Promissory Note

 The record indicates that, on December 3, 1996, the Defendant executed a promissory note for $25,000, at 8% interest and payable to P & W on demand. Plaintiffs contend that the Defendant had not repaid any interest or the principal, and seeking summary judgment on their claim to enforce the note. Defendant does not dispute that he received the loan, or that he has failed to repay it, but argues in passing that the claim is barred by the applicable statute of limitations. The court agrees.

 The Statute of Limitations affecting a note payable upon demand begins to run from the date of its execution, which in this case was in 1996. *See Phoenix Acquisition Corp. v. Campcore, Inc.,* 81 N.Y.2d 138, 596 N.Y.S.2d 752, 612 N.E.2d 1219, 1221 (1993) (citing *McMullen v. Rafferty,* 89 N.Y. 456, 459 (1882)). Plaintiffs argue that the limitations period begins when the contract was breached, which occurred in this case when the lawsuit was filed and payment was demanded. But the case cited by Plaintiffs, *Garcia v. Chase Manhattan Bank, N.A.,* involves the statute of

---

7. With respect to Plaintiffs' claim that the Defendant used company funds to pay $135,000 in his own taxes, the Defendant contends that the Plaintiffs' evidence is inadequate to justify summary judgment. Since Plaintiffs have otherwise established the elements of their claim for conversion, the total amount improperly converted may be resolved at the damages stage of this litigation.

limitations for causes of action to enforce certificates of deposit—not promissory notes, *see* 735 F.2d 645, 648 (2d Cir. 1984)—and New York law distinguishes between promissory notes and certificates of deposit. *See, e.g., Baker v. Leland,* 9 A.D. 365, 41 N.Y.S. 399 (4th Dept. 1896).

Because Plaintiffs' claim is barred by the applicable statute of limitations, their motion for summary judgment on this claim must be denied.

## III. Conclusion

For these reasons, Plaintiffs' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

The Defendant is found liable with respect to the P & W Entities' claims for breach of fiduciary duty, breach of good faith, breach of contract, conversion, unjust enrichment, money had and received.

It is so ordered.